[Civil No. 3458.   Filed September 30, 1935.]

[49 Pac. (2d) 626.]

PALMCROFT DEVELOPMENT COMPANY, a Corporation, Appellant, v. CITY OF PHOENIX, a Municipal Corporation, Appellee.

Messrs. Sloan, McKesson & Scott and Mr. Matt S. Walton, for Appellant.

Mr. F. H. Lyman, for Appellee.

ROSS, J.—This is an action by plaintiff Palmcroft Development Company against the City of Phoenix to recover certain moneys advanced by plaintiff and its assignors under contracts or agreements with the city, by the terms of which such moneys were advanced to be used in installing extensions of its water and sewerage systems to subdivisions of the city largely owned or controlled by the plaintiff and it assignors. The amounts so advanced were made upon estimates by the city of the cost of such installation, but in each case the cost of installation was less than the estimate and the city, in accordance with its agreement, returned the balance to the party making the advance. These agreements, ten in number, were made in the years 1927, 1928 and before July 10, 1929, and were performed by the city within ninety days or less after their dates. The water and sewerage systems installed were the only available ones to the inhabitants of such subdivisions and have been a source of revenue to the city ever since their installation.

Under the contracts the city was to return the advances in three annual installments and in some of the cases it actually did repay the first installment.

This action was brought to recover the balance of the advances, amounting to the sum of $70,000, and interest.

While the contracts were formally written, signed and executed by the contracting parties, they are valuable only in arriving at the terms of the agreements. They were not within the power of the city to make. The charter of the City of Phoenix and the public statutes of the state point out the only way in which the city can make public improvements, such as water and sewerage systems or extensions of such systems. Section 2, subd. (b), chap. II, and § 2,

subd. (26), chap. IV, ·Charter; § 408, subd. (4) and § 511, Rev. Code 1928. The methods are by special assessments against the property improved or by bond issue.

But, if it be granted that the city had power to borrow money from third parties with which to make the improvement, it did not possess the power to expend it except as provided by its charter. Specific improvements or appropriations exceeding one thousand dollars can be ordered only by ordinance or a resolution having the effect of an ordinance. Sections 10 and 12, chap. IV, Charter. The formalities prescribed in the charter (section 14, chap. IV)· for the passing, signing and publishing of ordinances authorizing contracts were not observed. The records of the city show that seven of the contracts were authorized by motion but are silent as to any direction to the city manager to sign the other three.

The defendant city contended below, and now contends, that it should not be required to pay the plaintiff and its assignors the unpaid balance of the advancements for the improvements it made and now owns, and from which it is collecting revenues, because of the failure of the city and the plaintiff and its assignors to follow the forms of the law in making the improvements; and further that, because said expenditures were not included in the city's budget for the years they were expended, under the city charter and under sections 3096–3099, Revised Code of 1928, said expenditures were without authority and, under the terms of the Budget Law of the city and state, cannot be made a charge against the defendant; and finally, because the plaintiff and its assignors did not present to the proper authority of the city a duly verified and itemized claim before

bringing the action, a prerequisite to authority to allow it, it is claimed, the action falls.

The court sustained all these contentions of the defendant and entered judgment against the plaintiff.

The plaintiff has appealed and urges that the judgment should have been in its favor upon the evidence and the law, because the contracting parties acted in good faith and for their mutual benefit and upon a valuable consideration, although not in accordance with the forms of law. It is said the city recognized the justice of plaintiff's demands by repaying advancements made to it in excess of the cost of installation and in some of the cases made partial payments as per its agreement. In other words, that the city ratified the contract and, having obtained all the benefits of it, is estopped to deny liability thereon and in justice should be required to repay the balance of the loans which was invested in an improvement it was authorized under its charter and the general laws of the state to make.

It is further insisted by plaintiff that all of these contracts were validated by chapter 10, Session Laws of 1931, sections 1 and 2 thereof, reading:

"Section 1. The board of supervisors of any county, or the governing body of any political subdivision, of the State of Arizona, having outstanding against it indebtedness incurred in good faith and for value received prior to July 10, 1929, in violation of Chapter III, Title 49, Revised Statutes of Arizona, 1913, and Article IV, Chapter 75, Revised Code, 1928, (state Budget Law), is hereby authorized and empowered to pay such indebtedness and discharge the obligations thereby assumed, out of funds on hand not otherwise encumbered, or out of funds raised for that purpose by direct tax levy, or by the sale of bonds to be issued in the manner provided by law for the issuance and sale of bonds for refunding the legal indebtedness of counties or other political subdivisions, or by any combination of such methods.

"Section 2. The disbursing officer of any such county or political subdivision is hereby authorized and directed to pay such indebtedness in the manner prescribed by law, out of the funds provided as aforesaid."

The trial court held this legislation was permissive only and rejected plaintiff's contentions.

We will consider the last point first. It will be observed that chapter 10, *supra,* confers on the governing body, in this case the city commission, authority and power to pay and discharge any indebtedness incurred prior to July 10, 1929, even though it was incurred in violation of the Budget Law (sections 3096–3099, Rev. Code of 1928), but does not, in terms, direct such governing body to allow and pay the indebtedness. Whether such language is to be construed as permissive or mandatory is the question.

One of the best, as also most complete, statements of the law concerning the construction of the words "authorized and empowered" is found in *Jones* v. *Madison County Commrs.,* 137 N. C. 579, 50 S. E. 291, 295, and we take the liberty of quoting from it at length:

"The terms of the first section of the act, conferring power to issue bonds, are 'authorize and empower,' and in ordinary acceptation and in private transactions are usually permissive; but when these words are used in statutes, they are frequently imperative, and where the statute is concerning public interests, or promotive of justice, or to secure and maintain the individual rights of others, such words are well-nigh uniformly construed to be mandatory. This rule is stated by text-writers of approved excellence, and is sanctioned by courts of the highest authority both in England and in the United States. Mr. Black, in his Interpretation of Laws, p. 541, formulates the rule thus: 'Where a statute provides for the doing of some act which is required by justice or public duty, as where it invests a public body, municipality, or

officer with power and authority to take some action which concerns the public interests or the rights of individuals, though the language of the statute be merely permissive in form, yet it will be construed as mandatory, and the execution of the power may be insisted upon as a duty.' And in commenting on the rule the author says: 'The most frequent illustrations of the application of this rule are found in statutes authorizing the settlement of claims held by private persons against the state or its municipal corporations, and those making provision for the levy and collection of municipal taxes.' He then cites several cases in which the term 'may' and 'authorized and empowered' and 'authorized' are respectively held to be imperative, and then proceeds: 'Even where the act provides that certain public officers, if deemed advisable, or if they believe the public good and the best interests of the city require it, may levy a certain tax, though these words are purely permissive in form, yet the act will be held to be peremptory whenever the public interests or individual rights call for the exercise of the power granted. And in general, where the statute enacts that a public officer "may" act in a certain way, which is for the benefit of third persons, he must act in that way.' To the same effect is Throop on Public Officers, secs. 547, 548; Endlich on Interpretation of Statutes, sec. 311; Sutherland on Statutory Construction, p. 547. Adjudicated cases of like effect can be found in *Supervisors* v. *United States,* 4 Wall. 435, 18 L. Ed. 419; *City of Galena* v. *Amy,* 5 Wall. 705, 18 L. Ed. 560; *Mayor of N. Y.* v. *Furze,* 3 Hill, 612; *People* v. *Flagg,* 46 N. Y. 401; *People* v. *Supervisors,* 51 N. Y. 401; *Brokaw* v. *Commissioners of Highways,* 130 Ill. 482, 22 N. E. 596, 6 L. R. A. 161; *State ex rel.* v. *King,* 136 Mo. 309, 36 S. W. 681, 38 S. W. 80; *Inhabitants of Veazie* v. *China,* 50 Me. 518; *Johnston* v. *Pate,* 95 N. C. 68.''

In *Catron* v. *Marron,* 19 N. M. 200, 142 Pac. 380, is found a collation of the authorities as to how such words should be construed when found in a statute:

"Section 8, c. 42, Laws 1909, as before seen, is permissive and not mandatory in form as to the levy of the one-mill tax. The language is:

" 'The said roads commission is hereby authorized and empowered to cause to be levied annually as other taxes are levied in the territory, a tax of not to exceed the sum of one mill upon each and every dollar of taxable property in the territory.'

"Under such circumstances the words 'authorized and empowered' are to be construed as 'authorized and required.'

"This doctrine is stated in 36 Cyc. 1159, as follows:

" 'Statutes which confer upon a public body or officer power to act for the sake of justice, or which clothe a public body or officer with power to perform acts which concern the public interests or the rights of the individuals although the language is permissive merely, will be construed as imposing duties rather than conferring privileges, and will therefore be regarded as mandatory.'

"Mr. Sutherland states the doctrine as follows:

" 'Such words, when used in statute, will be construed as mandatory for the purpose of sustaining and enforcing rights, and not for the purpose of creating a right or determining its character; they are peremptory when used to clothe a public officer with power to do an act which ought to be done for the sake of justice, or which concerns the public interest or the rights of third persons.' 2 Lewis' Sutherland Stat. Const. sec. 636.

"In *Tarver* v. *Com'rs Court of Tallapoosa,* 17 Ala. 527, it is said:

" 'It is true the language of the act is "that it shall be lawful for the commissioners' court to levy a tax," etc.; but it is well settled that the word "may," or the words, "it shall be lawful," are peremptory when used in a statute, where the public or an individual has a right *de jure* that the powers conferred by the act should be exercised.'

"In *Hugg* v. *Camden,* 39 N. J. Law, 620, the statute provided:

" 'That it shall and may be lawful for the city council to cause the lands, or so much thereof as they may think proper, to be sold at public auction.'

"The city council having refused to act, *mandamus* was brought against them (it) and sustained. The court said:

" 'It is the settled construction that where a public or municipal corporation, or body, is invested with power to do an act which the public interests require to be done, and has the means for its complete performance placed at its disposal, not only the execution, but the proper execution, of the power may be insisted on as a duty, though the statute conferring it be only permissive in terms.'

"In *Springfield Milling Co.* v. *Lane County,* 5 Or. (265) 271, it is said:

" 'When a public body or officer has been clothed by statute with power to do an act which concerns the public interest, the execution of the power is a duty, and though the phraseology of the statute may be permissive, it is nevertheless to be held peremptory.'

"In *Mayor and C. C. of Baltimore* v. *Marriott,* 9 Md. 160, 174 (66 Am. Dec. 326) it is said:

" 'It is a well-settled principle that when a statute confers a power upon a corporation to be exercised for the public good, the exercise of the power is not merely discretionary, but imperative, and the words "power and authority," in such case, may be construed "duty and obligation." ' "

In *Town of Flagstaff* v. *Gomez,* 29 Ariz. 481, 242 Pac. 1003, the question was the power or duty of the town to levy and collect taxes to pay a judgment against it for tort. The language we construed was:

"The common council of every such town shall have control of the finances and all the property, real and personal, belonging to the corporation; and shall likewise have power within the limits of the town . . . to appropriate money and provide for the payment of the debts and expenses of the town . . . "

and we said of the language:

"We are of the opinion that this paragraph not only gives the right but also imposes a positive duty upon the common council of the Town of Flagstaff to

'provide for the payment of the debts' of the town, including all outstanding judgments, as they are the highest possible evidence of just indebtedness.''

It will be noticed that there is no direction but simply a grant of power here and we held it mandatory.

When the purpose of chapter 10, *supra,* is considered, we have no doubt that it was intended that the governing body of the City of Phoenix should pay claims incurred prior to July 10, 1929, provided they were contracted in good faith and for value received.

On July 10, 1929, this court rendered its decision in *Bank of Lowell* v. *Cox,* 35 Ariz. 403, 279 Pac. 257, holding there was no liability on the county to pay a warrant issued to rebuild a bridge that had been washed out, because such item had not been budgeted nor any tax levy for that purpose made. In our opinion we said:

"It is true the judgment works a great hardship on a party which has in good faith purchased a county warrant regular on its face. . . . The appeal for redress, if any be due, must be made to the legislature and not to the courts.''

It is interesting to note that the validating act covers those claims contracted or incurred before July 10, 1929, the date on which the decision in the Bank of Lowell case was rendered.

We call attention to the language in section 2 of chapter 10, *supra,* which authorizes and *directs* the disbursing officer of the political subdivision to pay any such indebtedness. We think in accordance with the great weight of authority that the words ''authorized and empowered,'' as used in chapter 10, *supra,* should be construed as mandatory to ''maintain the individual rights of others,'' and that there-

fore these claims are taken out of the Budget Law of the city and state.

If these several indebtednesses were ''incurred in good faith and for value received prior to July 10, 1929,'' they should be paid, and plaintiff was entitled to judgment unless there are other grounds making it imperative to deny relief. It is not questioned that the plan adopted to get water and sewerage facilities on the different subdivisions was entered into by the owners thereof and the officers of the city in perfect good faith and for the mutual benefit of the city and the owners of such subdivisions. As a result thereof the city acquired very valuable taxable property and money with which to extend its water and sewerage systems to the inhabitants thereof, and the owners obtained the city's promise to repay the money loaned it to install such facilities, as also a very desirable and necessary element to make the subdivisions sanitary and available for homesites. The city promised to repay what had been advanced or loaned to it. For its promise it received full value, and it would seem that it invested the money so that now it is obtaining revenue therefrom. Of course if the debts were contracted in bad faith and the city has not received value, it would not be under obligation to pay them. Whether they were in good faith and for value, the parties or either of them have a right to have determined judicially. If the question of good faith and value had been raised in this case and evidence submitted thereon, the court would have to pass on the issue. The action was defended and decided on the grounds heretofore stated and not on the ground that the transaction was not *bona fide* or for value received. There is in the pleadings no suggestion of unfairness or bad faith on anybody's part. Everything was open and aboveboard.

All claims against a county or a political subdivision of the state incurred prior to July 10, 1929, were not intended to be validated unless such claims were incurred in good faith and for value received and in violation of the Budget Law. These are by the terms of chapter 10, *supra,* validated. Really the requirement that the claims should have been incurred in good faith and for value received by the city adds nothing to the right of the city or the taxpayer to resist their payment under the common law. Bad faith and inadequacy of consideration have always been a good defense as against the enforcement of contracts. So, the only thing to identify claims intended to be validated is that they were contracted or incurred in violation of the Budget Law before July 10, 1929. If they were, they are validated and made legal charges against the city to the extent the legislature has power to validate them. The legislation does not undertake to relieve them of their infirmities for failure to conform with the Budget Law only but makes that a condition to their validation. Had chapter 10 provided that counties and political subdivisions of the state that had incurred indebtedness in good faith and for value received prior to July 10, 1929, in violation of the Budget Law, were authorized and empowered to pay the same provided *all other requirements of the law were fully complied with in the incurring of such debts,* its curative effect would go only to the Budget Law. But there is no such limitation or restriction in chapter 10. Of course it is the duty of the court to give effect to the intention of the legislature. But, if the language used by that body is plain and unambiguous and leads to no absurd result, the courts are not justified in substituting their opinion of what was intended for the intent of the legislature so expressed. Allowing the language of the

legislature to mean what it says leads to no unreasonable or absurd results, but simply requires that these counties and political subdivisions do justice by paying what they honestly owe.

█ That the legislature had the power to validate these demands there can be no doubt. The general rule is stated as follows:

"Unless there be constitutional inhibition, a legislature has power, when it interferes with no vested right, to enact retrospective statutes, to validate invalid contracts or to ratify and confirm any act it might lawfully have authorized in the first instance." *U. S. Mortgage Co.* v. *Gross,* 93 Ill. 483, 494.

This language was later quoted with approval by the Supreme Court of the United States in *Anderson* v. *Township of Santa Anna,* 116 U. S. 356, 6 Sup. Ct. 413, 29 L. Ed. 633.

█ Chapter 10, *supra,* makes it the duty of the governing body to pay these indebtednesses. It does not require that a verified and itemized claim be filed with the city or city manager. The Charter, section 14, chapter XVIII, provides that the city manager shall not allow claims against the city unless they are itemized, verified and presented within six months after the last item accrues, etc. This charter provision, if it ever had any application to demands of the character here involved, was supplanted by chapter 10, *supra.*

Among other powers and rights conferred on the City of Phoenix in its charter is the power

"(g) To borrow money for any of the purposes for which the city is authorized to provide for the carrying out any of the powers which the city is authorized to enjoy and exercise, and to issue bonds therefor; . . . " Subd. (g), § 2, chap. II.

█ The improvements that were made in the different subdivisions to the city, the city was author-

ized to make and to borrow money for that purpose and to issue its bonds in payment thereof. Instead of issuing bonds it gave to plaintiff and its assignors its written promise to return the money in three annual installments. The manner of paying the loan was not in accordance with the charter. We do not think this slight deviation should relieve the city from paying what is a just debt. It is said in 44 Corpus Juris 1146, section 4089:

"When money is borrowed by a municipal corporation without authority of law, but is used and applied for a legitimate purpose, the corporation is liable on principles of equity and justice, as on an implied *assumpsit*, for money had and received. However, this principle does not apply where there is an express prohibition of the power to borrow money."

In *County of Greenlee* v. *Webster*, 30 Ariz. 245, 246 Pac. 543, the duty of the county to pay for road improvements under a contract not in conformity with law was the question and we said:

"The county has received the benefits of plaintiff's expenditures of money and labor and secured a permanent improvement which its board of supervisors had a right to make, but in making which the prescribed forms of the law were unintentionally violated. Under such conditions, we think no court would be justified in holding the county not liable for the reasonable value of such improvement, ascertained and determined by a trial of the issues in a court of justice. Its obligation to do justice by compensating the plaintiffs, who in good faith did work outside of their contract of a character more difficult and expensive than that called for by the plans and specifications and of which it received the benefit, is as great as that of an individual or business corporation, and we find no legal impediment in requiring it to do so."

In *Yuma County* v. *Hanneman*, 42 Ariz. 561, 28 Pac. (2d) 622, a similar question was passed upon and we there said:

"If a county cannot be compelled to pay for goods which it is authorized to purchase and which it does purchase and use, merely because all the formalities of law have not been complied with in the making of the original order, the contention of appellant is doubtless true. We have, however, had an analogous question before us in the case of *Greenlee County* v. *Webster,* 30 Ariz. 245, 246 Pac. 543, 545."

See, also, *Hermance* v. *Public School District No. 2,* 20 Ariz. 314, 180 Pac. 442.

We feel that what was said in *Muir* v. *Murray City,* 55 Utah 368, 186 Pac. 433, where a similar question was involved, is particularly applicable to the facts here. The court there said:

"In view of the facts and circumstances disclosed by the record in this case and the law applicable thereto, the court can arrive at no other conclusion than that the defendant is legally liable for the debt in question. The money was borrowed for a corporate purpose. It was profitably and judiciously expended, and the city and its inhabitants have already derived, and in years to come will continue to derive, substantial benefits therefrom. In these circumstances, even if the transaction were not in all respects regular and in strict accordance with law, this court does not feel authorized to say that the defendant should be permitted under the plea of *ultra vires* to escape its liability."

and on rehearing:

"The money was borrowed, the line constructed, and the uncontradicted evidence shows that the city has been greatly benefited by the transaction. The city, for its own benefit, has had the profitable use of the plaintiff's money ever since the line was completed. It would be inequitable, in the strongest sense of the word, for the city in these circumstances to longer withhold from plaintiff that which is justly due. Instead of further struggling to defeat plaintiff's claim, it ought to feel gratified to know that a way can be found by which it is enabled to pay its honest debts."

Plaintiff asks for interest but the contracts under which said advances were made specifically provide that the money shall be repaid "without interest."

The judgment is reversed and the cause remanded with directions that plaintiff have judgment for the principal sums due, without interest.

McALISTER, J., concurs.

LOCKWOOD, C. J., Dissenting.—The majority opinion in this case holds that the contracts involved therein were not within the power of the city to make for at least three reasons, one of them being that they violated the provisions of the Budget Law. It continues, however, by holding that chapter 10, Session Laws of 1931 validates the *contracts* notwithstanding these *ultra vires* acts.

I am of the opinion that the only reasonable interpretation of chapter 10, *supra,* is that it was meant by the legislature to authorize the governing body of any political subdivision to pay any *bona fide* indebtedness when the *only* illegality connected therewith was that it violated the Budget Law and was not intended to affect in any manner any other defense which the municipality might make as against the indebtedness. In construing acts of the legislature we have held repeatedly that it is the intent of that body which governs and not any particular form of words, and in seeking for such intent we have repeatedly disregarded the exact language of the statute. Literally construed it might perhaps be held that the act in question does waive *every* violation of the law made in incurring all municipal indebtedness, in which *one* of those violations be a breach of the Budget Law, while leaving untouched all indebtedness in which there had been exactly similar violations of law, except that in the last-mentioned cases the mu-

nicipality had omitted also to violate the budget law. It seems to me, however, in view of some of the absurd situations which might arise from such a holding, and the very obvious fact that the purpose of the act was to avoid the consequences of the decision of this court in *Bank of Lowell* v. *Cox,* 35 Ariz. 403, 279 Pac. 257, and that only, that such a construction is contrary to the undoubted intention of the legislature.

In view of the opinion of the majority an extended discussion of this point would be useless, but I think it my duty to protest against an interpretation of chapter 10 which I believe, under the rules of statutory construction which we have repeatedly declared, is a strained and unnatural one, and one which in some instances might lead to as disastrous consequences as did the old law which was held to have validated the Pima County Narrow Gauge Bonds. I think that the other violations of law involved in the making of the contracts sued on are governed by the rule laid down in *County of Greenlee* v. *Webster,* 30 Ariz. 245, 246 Pac. 543, and *Yuma County* v. *Hanneman,* 42 Ariz. 561, 28 Pac. (2d) 622. Therein we held, in substance, that where a municipality receives the benefit of expenditures made in good faith, even though in the making thereof all of the formalities of law have not been complied with, the parties expending the money might recover, *not the contract price,* but the reasonable value to the municipality of what it had received. I think that in this case the remedy of the plaintiff is not an action on the contracts, but a suit for the reasonable value of the improvements which the city has received.