263 P.2d 540

**GUSTAFSON et al.**

v.

**RAJKOVICH.**

No. 5673.

Supreme Court of Arizona.

Nov. 9, 1953.

Rehearing Denied Dec. 15, 1953.

Evans, Hull, Kitchel & Jenckes, by Jos. S. Jenckes, Jr., Phoenix, for appellants.

Fennemore, Craig, Allen & Bledsoe, by Calvin H. Udall, Phoenix, for appellee.

STANFORD, Chief Justice.

This is an appeal from a judgment entered after the court allowed a motion to dismiss plaintiff's complaint for failure to state a claim upon which relief could be granted. The Gustafsons, plaintiffs below, are appellants; Lillie May Rajkovich as administratrix of her deceased husband's estate and as herself, is the appellee.

In the complaint it is alleged that each of the appellants suffered severe personal injuries, as well as damage to their car, as a result of a collision with appellee's automobile; that appellee's car was then being driven in a reckless, careless and negligent manner by Larry S. Rajkovich, the fifteen-year old son of Philip and Lillie May Rajkovich, and that this negligence was the proximate cause of the appellants' injuries; that the father was riding in the Rajkovich car and was killed in the collision; that the young son who was driving appellee's car had no license to drive; that the fatal trip was being taken in the interest of the Rajkovich community; and that appellants presented a creditor's claim which was rejected by the administratrix of decedent's estate before this suit was brought.

The sole assignment of error is as follows:

"The lower court erred in granting defendant's Motion to Dismiss plaintiffs' complaint and in entering judgment for defendants that plaintiffs ···

282

take nothing by their Complaint for the reasons:

"(a) The Complaint states causes of action for personal injuries proximately caused by the negligence of Appellee, Lillie May Rajkovich, and the decedent, Philip Rajkovich, and by reason of their liability under the doctrine of respondeat superior for the negligence of their agent.

"(b) A cause of action for personal injuries does not, in the State of Arizona, abate upon the death of the wrongdoer.

"(c) Community property, after the death of a member of the community, remains charged with liability for personal injuries.

"(d) A cause of action for personal injuries, based upon the doctrine of respondeat superior, does not abate upon the death of the principal.

"(e) Under the laws of Arizona, the parents are jointly and severally liable for the negligent operation, with their consent, of a motor vehicle by their child under the age of eighteen years.

"(f) A cause of action for damages to personal property survives the death of the wrongdoer."

The primary questions involved on this appeal are, (1) whether a cause of action for personal injuries survives the death of the tort-feasor, (2) whether the liability of the marital community or of the community property for personal injuries caused by the negligence of a member of the marital community abates with the death of such member, and (3) whether the surviving wife, individually, could be held liable for personal injuries proximately caused by the negligence of her minor son in the driving of an automobile owned by the community and then being used by her husband in the community interest. These questions have all heretofore been answered by this court in the negative. The first question was answered by our decision in the case of McClure v. Johnson, 50 Ariz. 76, 69 P.2d 573, and the second and third questions were answered by the opinion in Donn v. Kunz, 52 Ariz. 219, 79 P.2d 965. However, we are now asked to depart from the rule of stare decisis, reexamine the matter and overrule these previous decisions.

Appellants' first proposition of law in support of their assignment of error is that in Arizona liability for personal injuries survives the death of the wrongdoer and that this is so notwithstanding our decision in McClure v. Johnson, supra. They base their contention on the fact that Arizona statute 1–106 A.C.A.1939 reads:

"The common law, so far only as it is consistent with, and adapted to the natural and physical conditions of this state, and the necessities of the people thereof, and not repugnant to, or inconsistent with, the Constitution of the United States, or the constitution or

laws of this state, or established customs of the people of this state, is hereby adopted and shall be the rule of decision in all courts of this state."

Appellants argue that the rule as expressed in McClure v. Johnson is inconsistent with our constitution and laws and is not adapted to the natural and physical conditions of this state and the necessities of the people, and therefore has never become our law. They further argue that the rule that actions for personal injuries abate at the death of the tort-feasor is an outgrowth of the old English Law when criminal law based partially upon recrimination was intermingled with torts law; and, therefore, personal liability had to die with the defendant. Appellants contend that since torts and crimes are now separate and distinct branches of the law, and the philosophy of the tort law is compensation of the injured rather than recrimination, the reason for the rule of abatement of actions no longer exists, and the law is that actions for personal injuries can be brought after the death of the wrongdoer.

The appellee answers the above argument by saying that McClure v. Johnson is the law and that the legislature must have thought so; otherwise, the legislature would not have found it necessary to enact exceptions to it (see sections 21–506, 21–534, and 38–1103, A.C.A.1939).

The court agrees with the appellee that the law of Arizona is expressed in its former decision of McClure v. Johnson,

supra. The court there said [50 Ariz. 76, 69 P.2d 576]:

"The rule seems a harsh one, for we cannot see why, as a matter of justice, the common-law disability should be removed if the action is filed before the tort-feasor dies, but remains if the death occurs too quickly for the injured party to commence the action. The remedy, however, is with the Legislature and not with the courts."

We take from the case of Westminster School District of Orange County v. Mendez, 9 Cir., 161 F.2d 774, 780, the following:

"* * * Of course, judges as well as all others must keep abreast of the times but judges must ever be on their guard lest they rationalize outright legislation under the too free use of the power to interpret. We are not tempted by the siren who calls to us that the sometimes slow and tedious ways of democratic legislation is no longer respected in a progressive society. * * *"

The appellants have submitted the views of only two states of the Union, Florida and Nebraska, to support their view; however, the majority of states have announced the view herein set forth.

Appellants' second proposition of law is that the liability of the community property for personal injuries caused by a negligent act on behalf of the marital community does not abate with the death of

a member of the community. This court held in Donn v. Kunz, supra, in which case the wife was driving the car on community business and negligently injured the plaintiff, that an action would not lie after the death of the wife, because the community was liable for the community torts, and the community died when one of its members died, and actions for personal injuries did not survive the death of the tort-feasor.

We believe that as long as the rule that actions for personal injuries die with the tort-feasor is the law of Arizona, the decision in Donn v. Kunz, supra, is sound.

In their third proposition of law, the appellants state that even if the doctrine of no survival of actions for personal injuries is the law of Arizona it has no application in a case where the wrongdoer is the agent and the decedent is the principal. We cannot see why this distinction in the law should be made and why the doctrine should not apply just as much as where the person who died was the tort-feasor himself. The law of agency is based on the principle of *qui facit per alium, facit per se, i. e.,* one acting by another is acting for himself, so whether the decedent actually committed the tort or had his "other self" commit it makes no difference; in fact, the plaintiff in that case would be left in a better position than he ordinarily is, because he can always bring action against the agent himself.

Appellants' fourth argument is that a married woman is liable for her torts and that this liability is not affected by the death of the husband and that, therefore, Lillie May Rajkovich is liable. In the abstract the above is true. But it does not apply in this case, because as the pleadings state, the decedent and Larry Rajkovich were driving on community business and not for the sole benefit of the appellee, Lillie May Rajkovich; therefore, it was not the tort of the appellee but that of the community. It follows then that the Donn v. Kunz case, supra, is applicable here, and we say that the community was liable but that it was dissolved at the death of Philip Rajkovich and, therefore, absolved of liability.

Appellants' fifth proposition of law is that parents who permit their child under the age of eighteen to drive are jointly and severally liable for injuries resulting from the child's negligent operation of the car. They base their view on section 66–269a, A.C.A.1939, as amended, which imposes such liability on parents who sign their child's application for an instruction or operator's license.

The parents in this case did not sign such an application, and the appellants argue that they should be just as liable as they would be had they signed for the instruction or operator's license, because to hold otherwise would encourage parents to let their children drive without a license by refusing to sign the application and so

would put a premium on the violation of a statute.

The court cannot agree with appellants' conclusion. The statute that the appellants are relying on was passed in the 1951 session of the legislature; at the same time the legislature repealed several statutes, among them section 66–255, A.C.A.1939, which reads as follows:

> "*Liability of owner or donor for negligence of minor under eighteen.*— Every owner of a motor vehicle causing or knowingly permitting a minor under the age of eighteen (18) years to drive such vehicle upon a highway, and any person giving or furnishing a motor vehicle to such minor, shall be jointly and severally liable with such minor for any damages caused by the negligence of such minor in driving such vehicle."

Section 66–255 was expressly repealed; there was no repeal by implication brought about by the passing of a second statute; there was an express repeal and the passing of a second statute, section 66–269a. It is fundamental that the repeal of an Act takes away from it all force, and the Act is totally destroyed. See Ex parte McCardle, 7 Wall. 506, 19 L.Ed. 264; People v. Marxhausen, 204 Mich. 559, 171 N.W. 557, 3 A.L.R. 1505; and the discussion in 31 Minn. L.Rev. 103, 116 (1946), Duncan L. Kennedy, Legislative Bill Drafting. Though not binding, it is the general rule that the most recent Act controls the former Act. See State of Arizona v. Angle, 54 Ariz. 13, at page 20, 91 P.2d 705, at page 708; McCarthy v. State, 55 Ariz. 328, at page 334, 101 P.2d 449, at page 451. And, the courts shall assume that where a statute, capable of being executed, has been enacted by the legislature in plain and explicit language, the legislature means what it has said. See Palmcroft Development Co. v. City of Phoenix, 46 Ariz. 200, at page 211, 49 P.2d 626, at page 630, 103 A.L.R. 802; Id., 46 Ariz. 400, 51 P.2d 921, 103 A.L.R. 811; Automatic Registering Mach. Co. v. Pima County, 36 Ariz. 367, at page 370, 285 P. 1034, at page 1035; Industrial Commission of Arizona v. Price, 37 Ariz. 245, at page 249, 292 P. 1099, at page 1100; State v. Borah, 51 Ariz. 318, 76 P.2d 757, at page 761, 115 A.L.R. 254; Price v. Shell Oil Co., 199 Okl. 193, 185 P.2d 211.

Therefore, since the legislature repealed *66–255,* and since the legislature enacted a new section, 66–269a, specifically applying to drivers under eighteen years and imposing liability on parents who *sign* their child's application, the plain meaning of the words in the second statute plus the express repeal of the first statute would indicate that the intention of the legislature was not to impose liability on everyone who lets a minor under the age of eighteen years drive, but to impose liability merely on the signers of the application. Furthermore, when the latter statute, 66–269a, is in pari materia with sections 66–

269, 66–269b, and 66–269c, the legislature's intention that the signer of the application is the person upon whom liability is to be placed becomes obvious. Such being the case, Donn v. Kunz, supra, remains in force, and, again, let us say it is not the province of this court to legislate.

 Appellants' sixth proposition of law is that a claim for damages to personal property survives the death of the tort-feasor. This is based on section 38–1103, A.C.A.1939, which reads in part as follows:

"* * * Any person, or his personal representative, may maintain an action against the executor or administrator of a decedent who in his lifetime has *wasted, destroyed, taken or carried away or converted* to his own use the goods or chattels of any such person, or committed any trespass on the real property of. such person." (Emphasis supplied.)

Other jurisdictions are divided on this question. South Dakota, in the case of Kerr v. Basham, 62 S.D. 484, 253 N.W. 490, under a statute the same as ours, held that no recovery was permissible for injury to personal property after the death of the wrongdoer unless the estate of the defendant benefited to some extent by the tort. We feel, however, that logic is on the side of the jurisdictions taking the opposite view. The District Court of Appeals of California, in interpreting a similar statute in the case of George v. Mc-

Manus, 27 Cal.App. 414, 150 P. 73, 74, said:

"* * * Each of the words 'wasted, destroyed, taken, or carried away' must not only be given some effect, but should be construed in accordance with the plain import of the language used. The chattels might be taken, carried away, or converted, without being 'destroyed,' and the converse is likewise true. We think it was the intention of the Legislature in adopting the provision to modify the well-known common-law rule to the extent that, where a deceased person had in his lifetime wrongfully destroyed personal property of another to his damage, such person should have a right of action against the personal representatives of such wrongdoer for the recovery of damages sustained by reason of the wrongful act. It is immaterial that deceased was not benefited by the act, * * *. The word 'destroyed' is defined to be 'to tear down, wrench apart, knock or pull to pieces.' The effect of the collision was to render plaintiff's automobile useless for the purpose for which it was intended, and, while not destroyed in the sense of being annihilated, it was, within the meaning of the. word used in the statute, 'destroyed.' * * * *"

This case was also followed in Barnum v. Jackson, 165 Wash. 347, 5 P.2d 497. And in West Coast Transport Co. v. Lan-

din, 187 Wash. 556, 60 P.2d 704, the Washington court held in effect that there need not be a total destruction.

Was the appellants' car "destroyed" within the meaning of the term as used in the statutes? Since the case was not tried on its merits, this issue was not decided; we therefore remand the case so that it can be determined.

Judgment is affirmed as to all matters except the matter pertaining to the destruction of the automobile. This question is remanded to the court below for trial.

Judgment affirmed in part, and reversed in part, with directions. Costs on appeal to appellants.

UDALL and WINDES, JJ., concur.

PHELPS, Justice (dissenting).

I feel constrained to dissent from the concept approved in the majority decision which adheres to the old common-law rule that a cause of action abates with the death of the tort-feasor in personal injury actions. I am not unaware of the adoption of the common-law rule by this court in actions of this kind in McClure v. Johnson, 50 Ariz. 76, 69 P.2d 573, 575. The court said in that case that the precise question of the survival of a cause of action after the death of the tort-feasor where death occurred before an action had been filed, had never been specifically determined in this state. It then observed that the court

had held in many cases that the common law, "except as modified by statute or unsuited to our local system or condition," is still in force in Arizona. It pointed out that the Lord Campbell Act adopted by Arizona had modified the common-law rule to the extent that the cause of action of an injured person survived his death and that section 3772, R.C.1928, section 21–530 A.C.A.1939, provides for the continuance of a pending action after the death of either party. The court then without further discussion adopted the rule laid down in McLellan v. Automobile Ins. Co. of Hartford, Conn., 80 F.2d 344, 349, an Arizona case decided a short time previously by the Circuit Court of Appeals of the Ninth Circuit to the effect that section 3772, supra, applied only to actions pending at the time of the death of the tort-feasor. If we hold that Arizona adopted the common-law rule of "actio personalis moritur cum persona" we are inclined to the view that the Federal Court correctly interpreted that section.

As above mentioned the court made no reference to the question of whether Arizona had adopted this rule of the common law. It concluded by saying:

"* * * We are of the opinion that the decision of that court (in McLellan v. Automobile Ins. Co. of Hartford, Conn., et al., supra) was correct on the point referred to, and that under the law of Arizona when a tortfeasor dies before the commencement

of an action, the cause of action does not survive his death, and a plea in abatement should be sustained if the fact appears on the face of the complaint, or a verdict should be directed in favor of defendant if it is first shown by the evidence. The rule seems a harsh one, for we cannot see why, as a matter of justice, the common-law disability should be removed if the action is filed before the tort-feasor dies, but remains if the death occurs too quickly for the injured party to commence the action. The remedy, however, is with the Legislature and not with the courts."

Insofar as the above decision is concerned the court assumed that Arizona had adopted the common-law rule that a cause of action for personal injury does not survive the death of the tort-feasor. It is true that this court had previously held in Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 242 P. 658, that the right of action to recover damages for injuries which article 18, § 6, of the Arizona Constitution said should never be abrogated was the common-law action of negligence and became imbedded in the constitution. That decision was quoted by the Circuit Court of Appeals in the McLellan case, supra.

I am of the view that this is an erroneous interpretation of that section of the constitution. The interpretation is based upon the assumption that we had adopted the English common law in toto, which is not the case. Whether we did adopt the "actio personalis, etc." rule with its concept of vengeance as the basis of recovery and as the measure of damages recoverable and that accordingly no cause of action survived against the estate of a deceased tort-feasor any more than a criminal prosecution survived against the criminal, appears to me to have been the very crux of the matter in the McClure case, supra, and its determination was of primary importance before adopting the rule laid down by the Federal Court of Appeals whose decisions are not binding upon us.

Section 1–106, A.C.A.1939, provides that:

"The common law, so far only as it is consistent with, and adapted to the natural and physical conditions of this state, and the necessities of the people thereof, and not repugnant to, or inconsistent with, the Constitution of the United States, or the constitution or laws of this state, or established customs of the people of this state, is hereby adopted and shall be the rule of decision in all courts of this state."

It is the view of the minority members of this court that Arizona did not adopt the old English common-law rule to the effect that a cause of action against a tort-feasor abates with the death of the wrong-doer, until it was adopted by the decision of this court in the McClure case, supra. The common-law maxim, supra, was rooted in the concept that the wrong to which the

maxim applied was criminal in nature and that any recovery in damages was upon the theory of vengeance against the wrong-doer, not compensation of the injured person commensurate with the injury sustained. We certainly did not adopt the measure of damages applied under the common-law rule nor the theory upon which damages were recoverable. Pollock on Torts (11th Ed., p. 61) declared the rule against survival of actions against deceased tort-feasors to be "one of the least rational parts" of the old English common law.

In Waller v. First Savings & Trust Co., 103 Fla. 1025, 138 So. 780, at page 783, the court stated that:

"We may accept as true in this case the statement that under the common law of England, taking into consideration the English royalist theory that men were subjects and not citizens, tort actions were for vengeance and not for redress of wrongs by allowing compensation for them, and that the rule there was accordingly to the effect that no cause of action survived against the estate of a deceased tort-feasor, any more than a criminal prosecution survives against the criminal."

Such a concept of a legal remedy for a wrong done to a person does violence to and is repugnant to every principle of justice upon which the fabric of democratic government is built. It is not and was not consistent with or adapted to the neces-sities of the people of this state and we believe it is inconsistent with the constitution and the laws of the state.

It was, at the date of the adoption of the constitution of Arizona, and is the law of torts today in this state and in every other state in the Union that the measure of damages for personal injury suffered through the wrong of another is that sum which will fairly compensate the injured person for the injuries sustained. It is not now and never has been even suggested that the measure of damages for injury to the person is punitive rather than compensatory. Even where the law allows punitive or exemplary damages where the injury results from the wilful or malicious acts of the wrong-doer, such damages are not recoverable unless compensatory damages are recovered upon which punitive damages may rest.

The adoption of the old common-law rule, supra, is so inconsistent with the law of torts for personal injuries where the tort-feasor survives and is so utterly un-reasonable and unjust that it constitutes a reflection upon the intelligence and the high sense of justice traditionally possessed by the pioneer law makers of this territory and state. To reach such a conclusion from the indisputable facts relating to its adoption is a "reductio ad absurdum". There is a well-established maxim in American jurisprudence that there is no wrong without a remedy. Either this maxim must fall or the common-law rule

of "actio personalis, etc." supra, must be rejected.

This court in adopting the decision of the Circuit Court of Appeals recognized its injustice and lack of logic to support it but excused its failure to reject it upon the ground that it was a matter for the legislature and not for the courts. It is our position that the right to redress for a wrong suffered by an individual at the hands of another is so imbedded in the traditions, mores and laws of this country that it has crystallized into a universally recognized sound public policy. This court stated in Ray v. Tucson Medical Center, 72 Ariz. 22, 230 P.2d 220, 229, that:

> "The declaration of 'public policy' is primarily a legislative function. The courts unquestionably have authority to declare a public policy which already exists and to base its decisions upon that ground. But in the absence of a legislative declaration of what that public policy is, before courts are justified in declaring its existence, such public policy should be so thoroughly established as a state of public mind, so united and so definite and fixed that its existence is not subject to any substantial doubt. (Citing cases.) * * *"

It is my view that the right of redress to every person against whom a wrong has been inflicted, is so thoroughly established as a state of public mind, so united and so definite and fixed that its existence is not subject to substantial doubt and that this court upon the ground of public policy alone, and even in the absence of either organic or statutory authority, has not only the right but the duty under such circumstances as exist in this case, to ground its decision squarely upon public policy.

The McClure case, supra, was decided in 1937. It is interesting to note that at the time that decision was handed down the old English common-law rule of "actio personalis moritur cum persona" no longer existed in England. In 1934 by the Law Reform (Miscellaneous Provisions) Act of that year the rule now applies in only four instances, to wit, "defamation", "seduction", "inducement of one spouse to desert the other" and to "petitions in divorce for damages for adultery". In every other case the right of action now survives the death of the wrong-doer and did when McClure v. Johnson, supra, was decided. Pollock on Torts (15th Ed., p. 52).

Even before the Act of 1934, there were many exceptions to the maxim. Pollock on Torts, (15th Ed. also at p. 52) says:

> "* * * At common law, notwithstanding the death of either party, detinue or ejectment would lie where one person's property had come wrongfully into the hands of another, and a wrong-doer could also be sued in *indebitatus assumpsit* (upon a fictitious contract) for the pecuniary profits which his misappropriation enabled him to make. And, by a series of

statutory enactments, some dating back to the dawn of the common law in the fourteenth century, actions of trespass and case could be brought wherever the tort had damaged property, real or personal. But, until 1934, if the tort merely affected the person, the right of action was extinguished by death. * * *"

It will be seen from the above that England, even before 1934, had greatly modified the old common-law rule which this court claimed that we adopted. England recognized the injustice of the rule and by subterfuge and fiction devised means of circumventing its harshness.

The majority opinion disposes of the contention of appellant that the rule of "actio personalis moritur cum persona" is and was inconsistent with the constitution and laws of Arizona and repugnant thereto at the time of the adoption of the constitution and that said common-law rule was not adapted to the necessities of our people and therefore never became a part of our law, by simply stating the court agrees with the appellee, as expressed in its former decision of McClure v. Johnson, supra, and quotes a statement therefrom that it is a harsh and unjust rule but the remedy is with the Legislature. In other words the majority members are content for this court to remain a slave to an ancient and barbaric legal concept long since outworn and which it admits is harsh and unjust, merely because the

court in a single opinion held that we had adopted the old common-law maxim, supra, as a rule of decision in this state. The holding upon which the majority decision in this case is based cannot be said to be stare decisis and binding upon us. No rule of property has arisen out of it and none can arise. If there was ever a reason for the existence of such a rule that reason did not exist at the time of the establishment of the territory of Arizona or at the time of the adoption of the state constitution and certainly it does not now exist.

The majority decision ignores the opinion of this court in Hageman v. Vanderdoes, 15 Ariz. 312, 138 P. 1053, 1057, L.R.A. 1915A, 491, which involved the common-law rule that a husband is liable for the torts of his wife. The court said in that case the constitution of Arizona did not abolish this rule of liability or directly recognize its existence. It then sought evidence of its adoption from statutory enactments relating to the respective property rights of husband and wife concerning property acquired both before and after coverture and the necessity of joining the husband in an action against the wife. In the statutes quoted by the court in that case nothing whatever is found therein relating to or bearing upon the husband's liability or nonliability for the torts of his wife. Notwithstanding this fact the court concluded that the husband was not liable for the torts of his wife based upon the

fact that we did not adopt the common law fixing such liability upon the husband. The court said as a prelude to its conclusion:

"The disabilities of the wife resulting from the marriage state, as known to the common law, have never been recognized by the lawmaking power of Arizona in their entirety, because, doubtless, that power has considered that all of the common-law disabilities of married women are not applicable to the conditions and necessities of the people of Arizona. * * *"

It also ignored Kleemann v. Sheridan, 75 Ariz. 311, 256 P.2d 553, in which this court by its decision without any statutory aid whatever repudiated the common-law technical rule requiring the four unities of time, title, interest and possession as being necessary to create a joint tenancy and stated that such requirements must give way to the intention of the parties. In so doing we aligned this court with the majority of courts in the United States.

We did not adopt the common law in toto as section 1–106, supra, clearly indicates. Nor do the decisions indicate its adoption in its entirety.

I believe a proper construction of both our constitutional and statutory provisions justifies the view that the common-law maxim, supra, was repudiated rather than adopted by the lawmakers of both the territory and state of Arizona. Article 18, § 6 of our constitution provides that:

"The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

Article 2, § 31 of the constitution entitled "Damages for personal injuries" provides that:

"No law shall be enacted in this state limiting the amount of damages to be recovered for causing the death or injury of any person."

At the time of the adoption of our constitution the right to recovery for personal injuries had been well established in all the 46 states of the Union. The framers of the Arizona Constitution must have been well aware of that fact. It appears to me to be more logical to interpret those sections of the constitution as a denial of the common-law maxim "actio personalis, etc." as a part of the law of Arizona than that it became imbedded in our constitution as held by this court in the McClure case supra. This certainly seems sound in the light of the provisions of section 1–106, supra, in existence since 1885 which adopted only so much of the common law as is consistent with the necessities of the people, etc. These provisions of the constitution required no legislative action to carry them into effect. They were not only intended as a limitation upon the pow-

ers of the legislature to either abrogate the right of action for the wrongful death of a person under any circumstances that may arise or to limit the amount of damages recoverable, but they constitute a clear declaration of the existence of such a right of action created by the language therein employed. By stripping the legislature of the power to either abrogate the right of action for the recovery of damages for personal injuries or to limit the amount of damages recoverable, in my opinion, they clearly repudiated the old common-law rule denying a right of action to an injured person if the wrong-doer dies before action is commenced. The interpretation given to these provisions of the constitution by this court in the McClure case, supra, is unsound and should be overruled. To hold that we adopt the old common-law maxim of nonliability for personal injuries where death ensues is entirely incongruous with the rule of liability in all other personal injury actions. It is irreconcilable with the constitutional provisions, supra, because it abrogates the right to maintain an action for damages where death ensues which the constitution says shall never be abrogated.

There is another provision of the constitution which I believe has some bearing upon the question here involved. Article 2, § 11 of the Arizona Constitution entitled "Judicial remedies" provides that:

"Justice in all cases shall be administered openly; and without unnecessary delay."

The entire system of American jurisprudence and philosophy of law is based upon the principle of justice. Does the old common-law rule of "actio personalis, etc.," comport with the constitutional mandate that justice in all cases shall be administered, etc.? Is it justice where a person is maimed and disabled for life by the wrongful act of another if he is denied redress merely because the wrong-doer dies before he files his action? Whereas if the wrong-doer dies immediately after action is filed redress is afforded him.

It is inconceivable to me that in an enlightened age the pioneer lawmakers of Arizona would have adopted a rule of common law originating more than 500 years ago, at a time when all persons other than royalty were subjects, not citizens; when the wrong was deemed to be against the subject, not against the state; at a time when the reason for the remedy was based upon vengeance rather than upon compensation as above stated. I contend that it would have been more reasonable and logical for the court in the McClure case, supra, to have repudiated the common-law maxim, supra, and adopted the enlightened view which the culture and mores of the time not only justified but dictated.

I am of the opinion that a fair interpretation of the constitution clearly indicates a repudiation of the rule; that said rule is repugnant to the constitution and wholly

inconsistent with the necessities of the people.

The position of the majority members of this court that the correction of this wrong is for the legislature and not for the courts, I believe, to be unsound for the reason as was stated in Pierce v. Yakima Valley Memorial Hospital Ass'n, Wash. 1953, 260 P.2d 765, 774. The court said:

"* * * having previously undertaken this function (of declaring a public policy), and having now concluded that our court-declared policy is no longer valid, there seems to be no compelling reason why we must wait for legislative action. We closed our courtroom doors without legislative help, and we can likewise open them. It is not necessary that courts be slow to exercise a judicial function simply because they have been fast to exercise a legislative one. As one writer has said: .

"'The courts which have granted immunity to charitable organizations appear to have usurped the legislative function of declaring public policy and making changes in the law in accord therewith. It would be strange for these same courts to sit back and wait for the legislatures to reverse the value judgments the courts have made.'

* * * * * *

"'Legislative action there could, of course, be, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule.'"

The adoption of the nonliability maxim of the common law in cases of personal injury where the wrong-doer dies was a court-made rule. It was erroneous and has no foundation either in logic or in justice. In the case of Ray v. Tucson Medical Center, supra, it was pointed out that at the time we adopted the rule of nonliability of charitable institutions for torts, England, by judicial decision, had repudiated the rule. In the instant case at the time we adopted the maxim "actio personalis, etc.," England had previously repudiated it by legislation. We said in Ray v. Tucson Medical Center, supra, and again in Graham County v. Buhl, 76 Ariz. 275, 263 P.2d 537, that when the reason for a rule no longer existed the rule itself must be discarded. This court should now adopt the enlightened view and repudiate the rule in its entirety.

Inasmuch as this is a minority opinion the views hereinabove expressed make it unnecessary to discuss other questions raised.

Judgment should be reversed.

LA PRADE, J., concurs.