450 P.2d 689

**STATE of Arizona, Plaintiff,**

v.

**David MARCUS, Defendant.**

No. 1732.

Supreme Court of Arizona.

In Banc.

Feb. 13, 1969.

232

Robert K. Corbin, Maricopa County Atty., by Dennis P. Blackhurst and James Douglas McVay, Deputy County Attys., Phoenix, for plaintiff.

Lewis, Roca, Beauchamp & Linton, by John P. Frank, John J. Flynn and Paul G. Ulrich, Phoenix, for defendant.

**STRUCKMEYER, Justice.**

David Marcus, a licensed physician, was informed against by the County Attorney of Maricopa County on three counts of illegal sale of narcotic drugs, a violation of A.R.S. § 36–1002.02.[1] Defendant duly moved to quash the information, which motion was denied. Shortly before trial, he orally renewed his motion and the trial judge certified this compound question as important and doubtful:

> "May a licensed physician who sells drugs (defined as narcotic drugs) in his office to a person whom he is not attending as a patient be found guilty of violating A. R.S. Sec. 36–1002.02 or is the sale of drugs by a licensed physician regulated exclusively by A.R.S. Sec. 32–1965?"

A.R.S. § 36–1002.02 is part of the Uniform Narcotic Drug Act originally enacted in 1935. In so far as it relates to the problems of this case, it prohibits the sale of any narcotic drug other than upon the written prescription of a physician and except as otherwise provided in Article I of Ch. 9, Title 36.

The exception is found in A.R.S. § 36–1007, subsec. A, § 11, Ch. 26, L. '35.

> "§ 36–1007. Professional use of narcotic drugs
>
> "A. A physician, osteopath or a dentist, in good faith and in the course of his professional practice only, may prescribe, administer and dispense narcotic drugs, or he may cause the same to be administered by a nurse or interne under his direction and supervision."

By the quoted enactment a physician may dispense narcotic drugs in good faith and in the course of his professional practice.

1. "§ 36–1002.02. Import and transport of narcotic drugs; sales and traffic in narcotic drugs; penalty

"A. Except as otherwise provided in this article, every person who transports, imports into this state, sells, furnishes, administers or gives away or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport any narcotic drug other than marijuana except upon the written prescription of a physician, osteopath, dentist, or veterinarian licensed to practice in this state shall be punished by imprisonment in the state prison from five years to life, and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than five years in prison."

Hence, A.R.S. § 36–1002.02 excepts from sales on written prescription narcotic drugs dispensed in good faith and in the course of a physician's professional practice.

 It is the defendant's position that A.R.S. § 36–1002.02 is inconsistent with A.R.S. §§ 32–1964 [2] and 32–1965.[3] These latter sections were enacted in 1951 as part of the Pharmacy Act, and have remained substantially the same today although A.R.S. § 32–1964 was amended somewhat in 1967. It is urged that the terms "dangerous drugs" and "any dangerous drugs" are all inclusive; that is, that they must necessarily include narcotics and hence, the latter sections repealed the provisions of A.R.S. § 36–1002.02. Ostensibly the two enactments § 32–1964 and § 36–1002.02 are

2. § 32–1964. Dangerous drugs defined and enumerated; restriction on sale; addition to list

"A. The term 'dangerous drug' means any drug or device manufactured, produced or sold at retail, the label of which is required to bear a statement that it is to be dispensed or sold only by or on the prescription of a physician, dentist or veterinarian, as recommended or designated under the provisions of the federal food, drug and cosmetic act. The sale, transfer, · gift or other disposition of any such drug or device is unlawful unless it is sold on a prescription of a member of the medical, dental or veterinary profession who is licensed by law to administer such drug or device. The term 'dangerous drug' includes, but is not limited to, the following:

"1. Any hypnotic drug. 'Hypnotic drug' includes acetylurea derivatives, barbituric acid derivatives, chloral, paraldehyde, phenylhydanto in derivatives, sulfonmethane derivatives or any compounds or mixtures or preparations that may be used for producing hypnotic effects.

"2. Aminopyrine, or compunds or mixtures thereof.

"3. Amphetamine, desoxyephedrine, or compounds or mixtures thereof except preparations for use in the nose and unfit for internal use.

"4. Cinchophen, neocinchophen, or compounds or mixtures thereof.

"5. Diethyl-stilbestrol, or compounds or mixtures thereof.

"6. Ergot, cotton root, or their contained or derived active compounds or mixtures thereof, and except preparations designed for the purpose of treating animals or poultry, and so labeled. The word 'animals' does not include homo sapiens.

"7. Lysergic acid, lysergic acid amide, LSD–25, LSD (dlysergic acid diethlamide), DMT (dimethyltryptamine), mescaline and its salts, psilocybin, psilocibin, psilocyn, psilocin, including their salts and derivatives, or any compounds, mixtures or preparations which are chemically identical with such substances.

"8. Oils of croton, rue, savin or tansy or their contained or derived compounds or mixtures thereof.

"9. Sulfanilamide or substituted sulfanilamides, or compounds or mixtures thereof, except preparations for topical application only containing not more than five per cent strength, and except preparations designed for the purpose of treating animals or poultry, and so labeled. The word 'animals' does not include homo sapiens.

"10. Thyroid and its contained or derived active compounds or mixtures thereof.

"B. The board of pharmacy may make such additions to the list of dangerous drugs set forth in subsection A of this section as recommended or designated under the provisions of the federal food, drug and cosmetic act. Notification of such additions shall be sent to all licentiates in pharmacy by the secretary of the board within thirty days from the adoption of such additions."

3. The relevant part of A.R.S. § 32–1965 is:

"§ 32–1965. Sale and possession of dangerous drugs; records

"A. It is unlawful for any person, firm, partnership, association or corporation to sell, offer for sale, barter or otherwise dispose of, or be in possession of any dangerous drugs, except under the following conditions:

" * * *

"2. Licensed physicians, dentists and veterinarians may dispense or prescribe barbituric acid and any of its derivatives, chloral hydrate or paraldehyde or any dangerous drugs if a record of all such dispensations, except administration to a patient upon whom the physician, dentist or veterinarian personally attends is kept showing the date when issued and bearing the name and address of the patient for whom, or the owner of the animal for which the drug is dispensed."

inconsistent but while it is a general principle that the most recent Act controls over the earlier Act, such is not invariably binding. Gustafson v. Rajkovich, 76 Ariz. 280, 263 P.2d 540, 40 A.L.R.2d 520. The controlling principle is that where a special provision of a statute deals with the same subject as a general statute, the special provision prevails. Trickel v. Rainbo Baking Company of Phoenix, 100 Ariz. 222, 412 P.2d 852; Enloe v. Baker, 94 Ariz. 295, 383 P.2d 748; Desert Waters, Inc. v. Superior Court, etc., 91 Ariz. 163, 370 P.2d 652; Knape v. Brown, 86 Ariz. 158, 342 P.2d 195. We said for example, in Desert Waters, Inc. v. Superior Court, supra:

"* * * In so far as the provisions of a special statute are inconsistent with those of a general statute on the same subject, the special statute will control, Knape v. Brown, 86 Ariz. 158, 342 P.2d 195 (1959); Whitfield Trans. Inc. v. Brooks, 81 Ariz. 136, 302 P.2d 526 (1956). The general statute remains applicable, however, to all matters not dealt with in the specific statute, Kay v. Hillside Mines, 54 Ariz. 36, 91 P.2d 867 (1939); Mercado v. Superior Court of Pima County, 51 Ariz. 436, 77 P.2d 810 (1938); State v. Jaastad, 43 Ariz. 458, 32 P.2d 799 (1934)." 91 Ariz. at 171, 370 P.2d at 657.

As can be seen by § 32–1964, the legislature has included certain known dangerous drugs and made provisions for others to be added by the board of pharmacy on designation under the provisions of the federal food, drug & cosmetic act. However, the legislature did not include narcotic drugs. It could hardly have been unaware in 1951 that narcotics were dangerous drugs and hence, in omitting from the list of proscribed drugs those classified as narcotics, it must have intended that their use be controlled elsewhere than under § 32–1964 and § 32–1965, as they were under the Uniform Narcotic Drug Act adopted in 1935.

■ A.R.S. § 36–1002.02 of the Uniform Narcotic Drug Act as it applies to physicians was not repealed by the adoption of the Pharmacy Act, § 32–1964 and § 32–1965. § 32–1964 is a general statute covering all dangerous drugs except those which specifically relate to narcotics. If it could be considered that there is a nominal area of inconsistency in the two Acts arising by reason of the use of the all embracing words in the Pharmacy Act "any dangerous drugs" the specific provisions of A.R.S. § 32–1002.02 pertaining to the dispensing of narcotic drugs must govern.

The defendant's argument for either an express or implied repeal of § 36–1002.02 in so far as it applies to physicians is highly technical and refined. It does not require a point by point discussion here. As an example, it is defendant's position that certain amendments in 1961 to the Uniform Narcotic Drug Act expressly repealed § 36–1002.02 as it applies to physicians. Defendant points to A.R.S. § 36–1002.01, subsec. A which reads:

"§ 36–1002.01. Possession of narcotic drugs for sale; penalty

"A. Except as otherwise provided in this article, every person who possesses for sale any narcotic drug other than marijuana shall be punished by imprisonment in the state prison for not less than five years nor more than fifteen years, and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than five years in prison."

■■ We think this statute is entirely consistent with the provisions of the Pharmacy Act and the other provisions of the Uniform Narcotic Drug Act. The two statutes, A.R.S. § 36–1002.01 and § 36–1002.02 do not embrace the same subject matter. § 36–1002.01 prohibits the possession for sale of any narcotic drug. It creates a separate, distinct offense from those found in § 36–1002.02. Each of the two sections provides its own punishment for a violation. Each can be enforced without reference to the other and stands independent of the other. § 36–1002.01 does not conflict with the Pharmacy Act § 32–1964 and

§ 32–1965 for the reason that it is expressly limited to narcotic drugs.

The first part of the certified question is answered in the affirmative and the second part is answered in the negative.

UDALL, C. J., LOCKWOOD, V. C. J., and McFARLAND and HAYS, JJ., concur.