### NORMAN STEAM LAUNDRY v. STATE INDUSTRIAL COMMISSION et al.

No. 23306.   Opinion Filed Nov. 15, 1932.

Ben F. Williams, Homer Cowan, and T. R. Benedum, for petitioner.

A. H. Meyer and J. Berry King, Atty. Gen., for respondents.

RILEY, J. Herein is presented a petition to review an award of the State Industrial Commission.

The award is assailed by petitioner upon two grounds. It is claimed:

First. That no notice of the alleged accidental injury was given to the petitioner (the employer) within 30 days after the date thereof.

Second. That there is no evidence of an accidental injury received by the claimant in the course of and growing out of her employment.

We consider the two together. The question of failure to give notice was specifically, raised by the employer in paragraph 3 of its answer. The record discloses that no written notice was given as required by section 7292, C. O. S. 1921.

There is no showing that such notice, for any reason, could not have been given. There is no finding by the State Industrial Commission that such notice could not have been given or that the employer was not prejudiced by failure to give the same, and, under the record, the evidence would not justify such finding.

It is for the State Industrial Commission, in the first instance, to excuse the failure to give the notice. But whether the excuse be based upon a specific finding by

the Commission, or a general finding and award, there should be some evidence to show either that the notice, for some sufficient reason, could not be given or some evidence to show that the employer or insurance carrier, as the case may be, was not prejudiced.

"As a general rule the mere failure on the part of the claimant to give written notice of his injury in strict compliance with the terms of the statute will not bar a claim for compensation where the employer has actual notice of the injury, in the absence of proof by the employer or insurance carrier that prejudice has resulted because of the failure to give such written notice." Fidelity Union Cas. Co. v. St. Indus. Comm., 130 Okla. 65, 265 P. 131.

But in this case there is no finding by the Commission that the employer had actual notice. While there is some evidence that claimant notified the foreman of the laundry that she was injured and that she showed her hand to the manager some ten days thereafter, there is not a word of evidence tending to show that she told either the foreman or the manager of any accidental injury or what caused the condition of her hand.

In describing to the Commission how she was injured all she said as to the cause of the injury was, "Well, I was checking in, pushing pins and bruised the nerves of my hand."

She does not seem to know herself when this occurred. She said it was about the 28th of March. In her first notice, filed with the State Industrial Commission on July 24, 1931, she stated the cause of the accident, "Pushing pins in nets," and described the nature and extent of the injury as "neuritis."

In a motion to set the cause for an early hearing filed by her attorney, she described the accident and the nature and cause of the injury as follows:

"While in line of duty checking laundry and while engaged in that work ran a large pin in her right hand injuring her arm and causing the loss of use thereby sustaining a total permanent disability of 75% of said arm."

Apparently intending to be more specific in her notice to the Commission on August 18, 1931, she filed another or additional "First Notice of Injury and Claim for Compensation," wherein she stated the cause of the accident as: "Stuck pin in hand while checking clothes," and the nature and extent of the injury, "Stuck pin in palm of hand, later became inflamed, hand now paralyzed and nerves affected (right hand)."

At the hearing she flatly denied that she had ever stuck a pin in her hand. At one place in her testimony she said: "Well, I was just pinning on the pins and bearing across there, and there was a red place come up and hurt and swelled." It was this that she showed to the manager about the 8th of April, but she does not attempt to say that she told him how or when her hand got in that condition or what caused it or that it was caused at any time while she was at work. There is not the slightest intimation that she was then claiming an accidental injury. The manager advised her to see a doctor, which she did.

Fairly illustrative of the cause of the injury and extent of actual notice, if any, is the testimony of claimant on cross-examination as follows:

"Q. Now, then, on this particular day did you stick that pin in your hand? A. No, sir. Q. You just used it the same way on the 28th of March you had the last three years? A. Yes, sir; like I always used it. Q. You say on the 28th of March you called this condition of your hand to the attention of the foreman? A. Yes, sir. Q. You requested medical attention or treatment? A. No, sir; just showed him my hand. Q. You just showed him the hand? A. Yes, sir. Q. Later, on the 8th of April, you showed it to Mr. Lindsay? A. No, sir; Mr. Lindsay came up and I was working, and sent me to the doctor. Q. When you talked to Mr. Lindsay, what did you say to him? A. I showed him my hand. Q. You tell him your hand was sore and ask him what to do about it? A. I don't remember. He just said I had better see a doctor."

If the testimony of claimant as a whole shows or tends to show any injury to her hand caused by use of the pins mentioned, it shows an injury occupational in nature rather than accidental.

It is contended that the employer paid compensation for awhile, and therefore must have had actual notice or did thereby admit an accidental injury, but the record does not bear out this contention. It is shown that claimant went to a doctor on the advice of the manager. That she did not work at the laundry for about three weeks thereafter; that her daily wage at the time she first quit was $2, five days per week. That during the three weeks she was off there was a general reduction of wages of 10 per cent., making her daily wage $1.80 when she returned to work. During these three weeks she was paid her regular wages of $10 per week for the first two weeks and $9 for the third week.

There is not the slightest evidence that the payment of claimant's full wages dur-

ing these three weeks was paid as or for compensation.

The record presents several unusual features. There is conflict between the two claims filed by claimant as to the cause and nature of the injury. The evidence of claimant conforms to neither. At the hearing the attorney for claimant was apparently intending to prove a state of facts to show an occupational disease rather than an accidental injury. The attorney for the employer, on the other hand, was apparently intending to prove a state of facts which would show that the disability could not be an occupational disease. Each side was apparently trying to make out a case for the other. Taken separately, they both nearly succeeded.

At the close of the evidence the presiding Commissioner, who heard the evidence alone at Norman, announced what the finding and order of the Commission would be without any opportunity to consult with either of the other two members. However, the final order shows that the findings and award, substantially the same as stated by the chairman they would be, were concurred in by Commissioner Fannin.

The record as a whole fails to show notice of the injury as required by the statute and fails to show any reason for the excuse of failure to give such notice. There is no evidence whatever of an accidental injury.

The findings of the State Industrial Commission are reversed and the award is vacated and set aside.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.