106 P.2d 302

**OGLETREE v. JONES et al.**

No. 4522.

Supreme Court of New Mexico.

Sept. 18, 1940.

Rehearing Denied Oct. 30, 1940.

John R. Brand, of Hobbs, for appellants.

Vincent M. Vesely, of Lovington, for appellee.

MABRY, Justice.

Appellee, a workman, sued appellant Jones, employer, and the appellant surety company, under the Workmen's Compensation Act, Comp.St.1929, § 156-101 et seq., for compensation for personal injury accidentally sustained while in the employ of Jones, recovered judgment upon the court's finding him temporarily totally disabled, and the employer and the surety company appeal.

Two questions are presented in this appeal: The first one, whether appellee, the claimant, suffered an injury which is compensable under our statute, and the other, whether the employer had actual knowledge or was given notice, of the accident and injury, as required by law.

Appellee was employed by appellant as a water pumper, supplying water for oil drilling operations in a Lea county oil field,

and working at his job from November 30, 1938, to January 3, 1939. His duties required that he remain at the well most of the time, night and day, watching the pump and attending to details about its operation. The weather was generally cold and appellee had rather meagerly provided for his comfort and convenience, by fixing up and using a small shack of some 6 by 8 feet, where he must lie down or stoop, when inside, because of the low ceiling. This shack was without windows. Its one door opened out upon an uncovered space where, within some five or eight feet of the said door, there was an open gas heater and cooker maintained for keeping warm the shack and its occupant, and for cooking appellee's food. The shack was known as a "dog house", doubtless quite appropriately named.

This rather crudely improvised "heater" was constructed by the employer, or at his directions, by attaching what was called a "riser and valve" to the gas fuel line running to the pump, to which appellee then attached a crudely made iron drum filled with stones. This served as the heating and cooking unit for the employee, who "lived" in the near-by "dog house", while both on and off duty.

It was while living and working under these circumstances that appellee became ill. This was within some 18 or 20 days after beginning his work. His illness almost resulted in his death. The illness or disease was diagnosed as "oedema", and was what one physician described as a bogging down of the kidneys, heart, and lungs, on account of the heavy load of gas poison entering through the lungs and infecting the tissues and organs of the whole system.

Section 4 of Chapter 92 of the Laws of 1937, the controlling statute here, reads:

"The right to the compensation provided for in this act, in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:

"(a) Where, at the time of the accident, both employer and employee are subject to the provisions of this act; and where the employer has complied with the provisions thereof regarding insurance.

"(b) Where, at the time of the accident, the employee is performing service arising out of and in the course of his employment.

"(c) Where the injury or death is proximately caused by accident arising out of and in the course of his employment, and is not intentionally self-inflicted."

The first point we consider is whether there was notice to the employer or knowledge on his part, of the accident and injury. Our statute, with reference to notice of accidents, provides that the injured workman shall give written notice: "Within thirty days after the occurrence thereof, unless prevented by such injury or other causes beyond his control, and, if so prevented, as soon as the same may be reasonably done, and at all events not later

than sixty days after such accident; provided, that no such written notice shall be requisite where the employer or any superintendent or foreman or other agent in charge of the work in connection with [which] such injury occurred had actual knowledge of the occurrence thereof."— Sec. 7, Chap. 92, Laws 1937 (156-113 N.M. Comp.Laws 1929).

The statute provides further exceptions to the rule requiring this written notice, where the party is prevented from giving it for certain reasons, not important here. Appellee relies upon none of these exceptions.

The statutes of many states (though not our own) have adopted the liberal policy of excusing notice, not only where there is actual knowledge on the part of the employer or agent in authority, but also where absence of notice has not prejudiced the rights of the employer.

We have held that the statute requiring the filing of the claim for compensation within the period fixed, is jurisdictional, a limitation on the right of action, Caton v. Gilliland Oil Co. of New Mexico et al., 33 N.M 227, 264 P. 946; Taylor v. American Employers' Ins. Co., 35 N.M. 544, 3 P.2d 76; and, also that notice, where required, is likewise a condition precedent to recovery, Maestas v. American Metal Co., 37 N.M. 203, 20 P.2d 924, 927.

It is obvious that the provision therefor found in our statute is a mandatory requirement upon which the right. of action rests, and not a mere formality to be lightly put aside. There is much reason behind this requirement that the employer have actual knowledge or that he be given written notice of the accident and injury. He has the right to examine into the facts and circumstances surrounding the alleged accident and question witnesses while memories are unfaded and minds unsoiled by partisanship.

It is also for the protection of the employer, "in order that [he] may consider the claim and either pay it or refuse it." Maestas case, supra. And, to prevent filing of fictitious claims when lapse of time makes proof of genuineness difficult. Wheeler v. Mo. Pac. Ry. Co., 328 Mo. 888, 42 S.W.2d 579.

Our statute requires actual knowledge on the part of the employer, "or any superintendent or foreman or other agent in charge of the work in connection with [which] such injury occurred," before written notice is to be dispensed with. Notice in casual conversation is insufficient. Herbert v. L. S., etc., Ry. Co., 200 Mich. 566, 166 N.W. 923. It is not enough for one to say he is injured and even show the injured limb without some showing that notice was given or that the employer had *actual knowledge* of what caused it. Norman Steam Laundry v. State Industrial Comm., 160 Okl. 107, 16 P.2d 92.

This knowledge which the statute requires means "more than just putting upon inquiry and involves more than knowledge

of the mere happening of an accident." 71 C.J. 992, par. 770(2); Bartlett's Case, 125 Me. 374, 134 A. 163; Bates & Rogers Const. Co. v. Allen, 183 Ky. 815, 210 S.W. 467. "Mere notice to the employer that the employee became sick while at work cannot be considered 'actual notice of injury' within the provisions of the act excusing written notice." 71 C.J. 992, 993, par. 770(3); Van Domelon v. Town of Vanden Broeck, 212 Wis. 22, 249 N.W. 60, 92 A.L.R. 501. And the knowledge which the employer must have to excuse a formal notice is of a compensable injury. Kangas' Case, 282 Mass. 155, 184 N.E. 380. See also Burgi v. Jacob Hoffman Brewing Co., 200 App.Div. 246, 193 N.Y.S. 344; State ex rel. Magelo v. Industrial Accident Board, 102 Mont. 455, 59 P.2d 785; Gumtow v. Kalamazoo Motor Co., 266 Mich. 16, 253 N.W. 198.

We examine the evidence in the light of the rules thus stated and quite uniformly followed, and in a light most favorable to the appellee, the workman, to determine whether or not it can be said there is any substantial evidence showing actual knowledge of the occurrence of the injury on the part of anyone upon whose knowledge appellee might rely.

All of the evidence upon the question of actual knowledge on the part of the employer himself is found in the testimony of appellee, and one Elmer Deese, the field boss and foreman in charge of the work in connection with which such injury occurred.

We take up first the question of whether the employer, appellant Jones, had knowledge of an occurrence or occurrences which appellee could characterize as an accident, resulting in his injury. It is conceded that the employer had no written notice. Any actual knowledge of any accident and injury must be found in a brief conversation which appellant held with appellee when appellee came to get his pay check when the work was completed, or, in the knowledge which Elmer Deese, the foreman, obtained from talking with or observing appellee after he began complaining of sickness.

Appellee testified he went to appellant to get the check due him for his last fifteen days of work, and that upon inquiry as to how he was, answered that he was "about knocked out." To this answer appellant remarked that "he was too", and appellee went on, in explaining this testimony, "I guess he was", and pointing out that appellant was at the time sitting by the fire with his shoes off. Appellee was then asked if he told appellant how he was knocked out and he answered: "I told him I was about knocked out with that gas in my chest, I couldn't breathe." "Is that all you had to say to him?" was the further question. To this appellee answered, "Yes, sir."

It is nowhere contended that appellee visited appellant to give notice or to complain of any alleged accident or injury. He went to get his check. It appears purely incidental that the question of how appel-

lant felt should have been asked, and equally incidental, and a part of à casual conversation, that the employer was then told that he "was about knocked out." It certainly cannot be said that this was sufficient to charge the employer with actual knowledge of any compensable accident and injury.

The effort of appellee to show knowledge on the part of the foreman, Elmer Deese, is likewise unavailing. Though it may be said that the evidence is sufficient to support the finding that Deese was in fact the foreman or agent in charge of the work in connection with which such injury occurred (a finding which appellant challenges), there is not substantial evidence to support a finding that he was ever advised or knew of any injury accidentally sustained by appellee, if, in fact, there was such.

We find nowhere in the testimony, including that of appellee himself, a clear suggestion, even, that the foreman, Deese, had knowledge of any accident, incident or occurrence, of which appellee now complains. Sensing this lack of proof of such knowledge, after a suggestion by the trial court that such proof might be missing, appellee secured permission to reopen and then endeavored to supply this vital link. He called Deese himself, as his witness. Deese testified that he knew nothing of the illness even, except that he saw appellee after he was paid off and no longer employed, but still about the place and "looking pale." Asked what was the matter, appellee told Deese that "he was kind of knocked out", but appellee did not say that this was caused by breathing the gas into his lungs in the course of his employment upon the job. Deese did not report this knowledge of appellee's sickness, if indeed, such being the extent of his knowledge, he was required so to do.

If notice to, or knowledge on the part of, the employer cannot be imputed from slight and unsatisfactory circumstances (Herbert v. L. S., etc., Ry. Co., and Kangas' case, supra), it certainly should not be imputed absent all circumstances tending to show knowledge of accidental injury suffered in the course of employment.

There being no proof of notice or actual knowledge on the part of appellant, the judgment cannot stand. A discussion of the further question, of whether appellee actually suffered an accidental injury within the meaning of our statute, now becomes unnecessary.

For the reason stated, the cause is reversed with direction to the trial court to reinstate the case upon its docket and enter judgment for appellant, and it is so ordered.

BICKLEY, C. J., and ZINN and SADLER, JJ., concur.

BRICE, Justice (dissenting).

The findings and evidence clearly show that the appellee was injured by accident while performing services arising out of and in the course of his employment, and that such injury was proximately caused

by such accident. He did not give written notice as the statute requires, which is, "notice in writing of such accident and of such injury to such employer within thirty days after the occurrence thereof." But the statute further provides, " * * * no such written notice shall be requisite where the employer or any superintendent or foreman or other agent in charge of the work in connection with [which] such *injury* occurred, had actual knowledge of the *occurrence thereof."*

The question is whether the appellant had actual knowledge of the occurrence of the injury.

The appellee, who had always been in good health, was employed by appellant from November 30 to January 3d to pump water from a well used in connection with the drilling of an oil well. For a place to sleep, the appellant furnished him a "doghouse" four by six feet in size and too low in which to stand erect, with only a small opening on one side through which he crawled into the doghouse to sleep. As it was very cold, he was furnished material with which he constructed an improvised heater, consisting of an oil drum with sheets of iron around and over it. He filled the drum with rocks and to it appellant ran a gas pipe "and fixed a flame" to heat the rocks in the drum which was used to keep him warm and for cooking his meals. A hole was cut in the top of the drum, through which fumes from raw gas escaped and passed into the doghouse. The appellant placed the doghouse within three feet of

this death trap, with the door facing it. The appellee was in the doghouse, or sitting in the door, practically all the time. The appellee testified that: "I worked along for 18 or 20 days and I began to get knocked out in my chest. I did not know what was the matter. A friend came along and said 'That is gas that is killing you.' * * * I went ahead and the first thing I knew I was almost knocked out. I got out to crank the engine and gasped like I had run a mile. * * * When I got through with the job the third of January I was almost completely knocked out." When the appellee went to get his check, at the conclusion of his work, he told the appellant that he was badly knocked out "from the gas on the job," and that he could not breathe because of the gas on his chest.

Deese, who employed him, and who inspected the work each day, testified, in substance, that appellee told him that his illness was caused by the gas at the well. He also testified that when he (appellee) finished, "he was in very bad shape."

By the first of February his condition was desperate and he was placed in a hospital for treatment.

Appellant had actual knowledge that the improvised heater had been placed within three feet of the door of the doghouse where appellee had to stay to keep warm; that it was heated by a flame burning raw sulphur gas in the oil drum, and that the poisonous fumes escaped through the top of the drum. When appellee went for his check he was a very sick man, and from

descriptions of him, appellant had actual knowledge from his appearance of that fact; likewise he must have known or believed, from appellee's appearance when he was employed, that he was then in good physical condition.

The only fact he did not know with absolute certainty was that the gas caused appellee's injury. But I think that appellant had sufficient knowledge of that fact. He knew of the proximity of the heater to the doghouse, and of the burning of raw sulphur gas in it, which threw off deadly sulphur dioxide fumes. Knowing these facts, and giving him credit with having common sense, he knew as a necessary inference that appellee was poisoned from the gas emitted from the improvised heater, for the making of which, he furnished the material. The suggestion from appellee, that "the gas on the job" had poisoned him, must have awakened appellant to a realization of that fact, as his physical condition and the other facts stated, were actually known to appellant, and the inference that the gas was the cause of appellee's injury was the only reasonable one. It was the nearest to actual knowledge that he could have; as our experience shows the lack of dependability of medical testimony in many of such cases. The trial judge is usually confronted with diametrically opposed opinions, given by experts of the medical profession (as in this case); when it would seem that such an injury as that appellee undeniably suffered, could be determined with reasonable certainty.

Appellant had much more definite knowledge of the injury than the employer had in Zurich, etc., Co. v. Industrial Comm., 203 Wis. 135, 233 N.W. 772, 775. The Wisconsin statute regarding notice is substantially the same as that of New Mexico. An employee who had worked several years in a dusty atmosphere became disabled by an ailment which the physicians diagnosed as chronic bronchitis, and was advised to cease work in the dusty atmosphere. The court said:

"When the deceased had reached a point where he felt he could no longer continue his employment in the chipping room, he notified his employer and asked for other work which was given to him. The employer must have known that the change was on account of something connected with work in the chipping room that did not obtain in the outside employment. In one, he was exposed to dust; in the other, he was not. The change resulted in a wage loss of $4.20 per week, which must have indicated that the reason for the change was an imperative one. While the employee did not have notice under the Workmen's Compensation Act in mind, the employer nevertheless was made aware of all the essential facts and was not misled.

"While the notice is far from satisfactory and was informal, we are inclined to the view that the evidence was sufficient to sustain the finding of the commission that the employer, under the particular circumstances of this case, had 'actual notice' within the meaning of the statute."

The following applicable references are copied from Cooper v. Independent, etc., Co., 52 Idaho, 747, 19 P.2d 1057, 1058, in which it was held that the employer had actual knowledge of the injury from a conversation not intended as notice of it:

"In Walkden's Case, 237 Mass. 115, 129 N.E. 396, 397, it was said: 'It is settled by Brown's Case, 228 Mass. 31, 37, 116 N.E. 897, and Murphy's Case, 226 Mass. 60, 115 N.E. 40, that because knowledge on the part of the employer is a substitute for the written notice the employer must have knowledge within the time when the written notice should have been given. The word "knowledge" is used in the statute in its ordinary sense as meaning actual knowledge, but not absolute certainty. While notice of what has happened is not actual knowledge that the employee has been injured, it is such information as men usually act upon in ordinary human affairs. "Intelligible information of a fact, either verbally or in writing, and coming from a source which a party ought to give heed to, is generally considered as notice of it, except in cases where particular forms are necessary." George v. Kent, 7 Allen (Mass.) 16, 18.'

"Also it was said in Allen v. City of Millville, 87 N.J.Law 356, 95 A. 130, 131: 'The next question is whether Kates had actual knowledge. He did not in the sense that he saw the injury and knew of it first hand, so that he could properly testify as a witness. We think, in spite of the use of the word "actual" to qualify the knowledge required, that first-hand personal knowledge is not what is meant.'

"In Frank Martin-Laskin Co. v. Goetsch, [and] Industrial Comm., 172 Wis. 548, 179 N.W. 740, 741, the court said: 'We are therefore of the opinion that, where the employer has notice that an accident has happened, and that some injury, no matter how trifling, has resulted to an employee by reason thereof, he has the knowledge that it was intended should be brought home to him by the service of the written notice. Of course, it must be understood that the nature of the injury should be described as fairly as possible under the facts and circumstances existing at the time the notice is given.'

"The court, in Bates & Rogers Const. Co. v. Emmons, 205 Ky. 21, 265 S.W. 447, 448, made the following statement: 'But notice of a physical injury carries with it notice of all those things which may reasonably be anticipated to result from it.'

"In discussing the question of knowledge, the court in Marshall Field & Co. v. Dunlap [and] Industrial Comm., 305 Ill. 134, 137 N.E. 121, 123, says: 'No notice which could have been given would have furnished the employer with fuller knowledge of the facts and circumstances than it possessed the day after the accident. It did not know the disastrous results which were to follow and no notice could have furnished it with such knowledge. It had knowledge of all the details connected with the accident, and in such case the employer is not relieved from liability even if

technically it had not been given a notice by the injured employee.'"

See 71 C.J., "Workmen's Compensation Act," Secs. 769, 770.

I conclude that appellant had actual knowledge of the injury, and that the judgment of the trial court should be affirmed.