439 P.2d 242

Jewell O. SMITH, Plaintiff-Appellant,

v.

STATE of New Mexico, Defendant-Employer, and Mountain States Mutual Casualty Company, Defendant-Insurer, Defendants-Appellees.

No. 96.

Court of Appeals of New Mexico.

March 15, 1968.

Denis Cowper, Chavez & Cowper, Belen, for appellant.

James A. Parker, Modrall, Seymour, Sperling, Roehl & Harris, Albuquerque, for appellees.

OPINION

OMAN, Judge.

Plaintiff sought benefits under the New Mexico Workmen's Compensation Act (§§ 59–10–1 through 59–10–37, N.M.S.A.1953). She appeals from a summary judgment entered in favor of defendants.

Since we are of the opinion that the issue of notice is determinative of the appeal, we confine ourselves to the facts and the law pertinent to this issue. We do so fully realizing that a summary judgment can properly be entered only when it is determined that the movant is entitled to a judgment as a matter of law, and that in

making this determination the pleadings, depositions, affidavits and other matters presented and considered by the trial court must be viewed in the most favorable aspect they will bear, including all reasonable inferences deducible therefrom, in support of the right to trial on the issues. Simon v. Wilson, 78 N.M. 491, 432 P.2d 847 (Ct. App.1967). See also Scott v. General Equipment Co., 74 N.M. 73, 390 P.2d 660 (1964).

Plaintiff was employed by the Los Lunas Hospital and Training School of New Mexico, which will hereinafter be referred to as defendant. She went to work for defendant on February 10, 1960. In 1962 she sustained an accidental injury to a finger while on the job. She prepared and filed a written report of this accident and injury on a form furnished by defendant. Report forms were at all times available for the use of employees in the cottage where plaintiff worked. All employees had been instructed to use and complete these forms upon sustaining an accident or injury.

On April 20, 1966, a small blister developed on plaintiff's left foot while she was at work. At the end of her work that day she was sitting with her shoe off when a fellow-employee, and also later one of her supervisors, came into the room. Each asked her "what the trouble was." She told them she had developed a small blister while working, and she showed them the blister.

At that time she did not realize the "blister was or could become disabling, and consequently continued to work every shift thereafter without making a * * * written report." In fact, she stated she paid "no attention" to the blister and "never thought anything about it." She did not make out a report "because it was such a little thing," and because she "didn't think it amounted to anything." She continued to work until May 22, 1966.

She first consulted a doctor on April 22, about an infection in her big toe resulting from the blister. She consulted another doctor about this infection on May 4, 5, 6, 7 and 12, and a third doctor on May 18. These doctors were selected, employed and consulted by plaintiff, without suggestion or knowledge on the part of defendant. She says she first realized on May 20 that she was suffering from a disabling injury. As already stated, her last day of work was May 22.

On about May 8, plaintiff's immediate supervisor noted that plaintiff had cut away a portion of her shoe. Plaintiff explained that she had done so because her foot was hurting, but she did not say why her foot was hurting and made no mention of any accident having been sustained or injury having occurred as a result of her employment.

The director of the cottage life, or cottage organization, also knew plaintiff had a sore foot, but he had no knowledge of what caused it and had received no report that she had sustained an accident or an injury while on the job.

The cottage coordinator, who was in charge of employee time records, and whose duties included investigation of reports of accidents and injuries to employees, first became aware that plaintiff was suffering with her foot shortly before May 22, when she mentioned her foot was hurting. A few days later she advised him that her foot was still hurting, that she had gone to a doctor, and that she was going to need some time off. She then came in and picked up her check on May 22, and advised that her foot was getting worse. She was asked to keep the coordinator informed as to how she was feeling. She did telephone several times and stated she was not getting any better.

She was hospitalized on June 17, and remained in the hospital for thirty-three days, during which time, because of the infection, her leg was amputated midway between the knee and thigh.

Some time in August she furnished defendant with a written report in which she

stated she first noticed the infection on April 21; that on April 22, the infection was worse and she went to a doctor "for a shot"; that thereafter she went to other doctors for several shots; that she was finally hospitalized on June 17; and that her leg was removed on July 12. She also stated in her report that when she first noticed the infection she considered filing a report, but she "thought it would clear up so [she] neglected to do so."

No claim is made by her that she gave notice within the time required by § 59–10–13.4(A), N.M.S.A.1953, which provides:

"A. Any workman claiming to be entitled to compensation from any employer shall give notice in writing to his employer of the accident and of the injury within thirty [30] days after their occurrence; unless, by reason of his injury or some other cause beyond his control the workman is prevented from giving notice within that time, in which case he shall give notice as soon as may reasonably be done, and at all events not later than sixty [60] days after the occurrence of the accident."

It is apparent that she is unable to bring herself within the sixty-day maximum notice period, no matter how liberally in her favor the facts are viewed, and no matter how liberally this section of our statutes is construed. She unquestionably had knowledge of the accident, if there was an accident, and of the resulting injury no later than May 22, the last day she worked. See Michael v. Bauman, 76 N.M. 225, 413 P.2d 888 (1966); Sanchez v. James H. Rhodes & Co., 74 N.M. 112, 391 P.2d 336 (1964); Langley v. Navajo Freight Lines, Inc., 70 N.M. 34, 369 P.2d 774 (1962); Montell v. Orndorff, 67 N.M. 156, 353 P.2d 680 (1960). We do not mean to suggest that under the facts of this case the time for giving notice did not commence running until she was unable to perform the duties of her employment. We need not and do not decide this question, because, even accepting May 22 as the date when the time within which to give notice began running, her written notice was still untimely.

Provision is made by our statutes for dispensing with written notice, as required by § 59–10–13.4(A), N.M.S.A.1953, above quoted. The condition under which such written notice is not required is set forth in § 59–10–13.4(B), N.M.S.A.1953, which provides:

"B. No written notice is required to be given where the employer or any superintendent or foreman or other agent in charge of the work in connection with which the accident occurred had actual knowledge of its occurrence."

■ To constitute "actual knowledge", which will excuse the giving of "notice in writing," there must be knowledge on the part of the employer, or a superintendent, foreman, or other agent in charge of the work in connection with which the accident occurred, that an accident has occurred, and this must be accompanied by knowledge of a compensable injury. Baca v. Swift & Co., 74 N.M. 211, 392 P.2d 407 (1964); Wilson v. Navajo Freight Lines, Inc., 73 N.M. 470, 389 P.2d 594 (1964); Daulton v. Laughlin Brothers Drilling Co., 73 N.M. 232, 387 P.2d 336 (1963); Swallows v. City of Albuquerque, 59 N.M. 328, 284 P.2d 216 (1955); Ogletree v. Jones, 44 N.M. 567, 106 P.2d 302 (1940).

■ The most that can be said for the notice or knowledge which defendant had is that defendant did have notice that plaintiff had developed a blister on her foot while at work. There is nothing to evidence that defendant knew just what caused the blister, or that the subsequent infection and resulting disability were connected with this blister. The casual conversations concerning the existence and the time of development of the blister, and the subsequent casual conversations concerning the fact that her foot was hurting and that she had consulted a doctor or doctors, were not sufficient to charge defendant with knowl-

edge of the occurrence of an accident and of a compensable injury resulting therefrom. See Simmons v. International Minerals & Chemical Corp., 77 N.M. 100, 419 P.2d 756 (1966); Sanchez v. James H. Rhodes & Co., supra; Scott v. General Equipment Co., supra; Wilson v. Navajo Freight Lines, Inc., supra; Daulton v. Laughlin Brothers Drilling Co., supra; Ogletree v. Jones, supra.

The summary judgment should be affirmed.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.