505 P.2d 1241

Allen BECKWITH, Plaintiff-Appellee,

v.

CACTUS DRILLING CORPORATION and Liberty Mutual Insurance Company, Defendants-Appellants,

Consolidated for Trial with
Allen BECKWITH, Plaintiff-Appellee,

v.

McVAY DRILLING COMPANY and Reliance Insurance Company, Defendants-Appellants.

No. 930.

Court of Appeals of New Mexico.

Nov. 30, 1972.

Rehearing Denied Dec. 22, 1972.

Certiorari Denied Jan. 26, 1973.

Sam Laughlin, Jr., R. E. Richards, Girand & Richards, P.A., Hobbs, for Cactus Drilling Corp. and Liberty Mutual Ins. Co.

Dewie B. Leach, Hobbs, for McVay Drilling Co. and Reliance Ins. Co.

Warren F. Reynolds, Easley & Reynolds, Hobbs, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Beckwith suffered two accidents arising out of and in the course of his employment. The respective defendants—Cactus (Cactus Drilling Corporation and Liberty Mutual Insurance Company) and McVay (McVay Drilling Corporation and Reliance

Insurance Company)—appeal from a judgment in favor of Beckwith. The issues concern: (1) actual knowledge of injury; (2) partial disability; and (3) liability for medical treatment.

*Actual knowledge of injury.*

The trial court found, as to each of the claims, that the respective defendants had actual knowledge, within thirty days, of the accident " * * * and that plaintiff suffered compensable injuries as a result thereof." Neither Cactus nor McVay challenge the finding as to actual knowledge of the accident; both challenge the finding as to actual knowledge of compensable injury.

The problem arises because of evidence of more than one injury in each accident. Cactus admits knowledge of a compensable injury to Beckwith's left leg. There is evidence that Beckwith also sustained an injury to his low back in the Cactus accident. Cactus claims it had no notice, within the statutory period, of the low back injury. There is no claim of latent injury.

There is evidence that McVay had actual knowledge of a compensable injury to Beckwith's right leg. There is evidence that Beckwith also sustained an injury to his cervical and thoracic spine in the McVay accident. McVay claims it had no notice, within the statutory period, of the injury to the spine. Again, there is no claim of latent injury.

The record supports the contention of defendants concerning lack of notice, within the statutory period, of the low back and cervical and thoracic spine injuries. The issue is whether notice of those injuries was required under our statutory provisions. Cactus and McVay assert they are not liable for any injury absent notice of that injury. Beckwith contends once the defendants had notice of any compensable injury resulting from the accident involved the notice requirement was satisfied. See Geeslin v. Goodno, Inc., 77 N.M. 408, 423 P.2d 603 (1967).

Our answer is reached by considering the legislative history of the statute and applying that statute as enacted by the Legislature.

Section 59–10–13.4, N.M.S.A.1953 (Repl. Vol. 9, pt. 1) was enacted in 1959. The prior statutory provision for notice was repealed by Laws 1959, ch. 67, § 32. The prior statute, § 59–10–13, N.M.S.A.1953 (Orig.Vol. 9) and the current statute, § 59–10–13.4, supra, have similar provisions concerning written notice. Both refer to written notice of "accident" and "injury." The trial court made no findings concerning written notice; the appeal is presented as an "actual knowledge" question. We point out the parallel requirements of notice of "accident" and "injury" where the notice is written because statutory provisions for "actual knowledge" have never required knowledge both of accident and injury.

The prior statute, § 59–10–13, supra, stated that written notice was not required " * * * where the employer or any superintendent or foreman or other agent in charge of the work in connection with [which] such *injury* occurred had actual knowledge of the occurrence thereof. * * *" (Our emphasis). Section 59–10–13.4(B), supra, removes the requirement of written notice " * * * where the employer or any superintendent or foreman or other agent in charge of the work in connection with which the *accident* occurred had actual knowledge of its occurrence." (Our emphasis). Wilson v. Navajo Freight Lines, Inc., 73 N.M. 470, 389 P.2d 594 (1964) states: (a) "occurrence" in § 59–10–13.4(B), supra, means the "accident" and (b) the change from "injury" to "accident" was a significant one. See also Roberson v. Powell, 78 N. M. 69, 428 P.2d 471 (1967).

Since 1959, our statutory notice provision has not required actual knowledge of injury to avoid the requirement of written notice; only actual knowledge of the accident is required. Dicta in Waymire v. Signal Oil Field Service, Inc., 77 N.M. 297, 422 P.2d 34 (1966) supports this view. See also Collins v. Big Four Pav-

ing, Inc., 77 N.M. 380, 423 P.2d 418 (1967).

New Mexico appellate decisions have not applied the statute as enacted in 1959. Even while recognizing the change from actual knowledge of injury to actual knowledge of the accident, Roberson v. Powell, supra, states " * * * the knowledge must be of an accident and compensable injury. * * * " Wilson v. Navajo Freight Lines, Inc., supra, impliedly applies the same rule. This court has followed Roberson v. Powell, supra. See Clark v. Duval Corporation, 82 N.M. 720, 487 P.2d 148 (Ct.App.1971); Lyon v. Catron County Commissioners, 81 N.M. 120, 464 P.2d 410 (Ct.App.1969); Smith v. State, 79 N.M. 25, 439 P.2d 242 (Ct.App.1968).

We do not attempt to list all of the cases applying the rule stated in Roberson v. Powell, supra, in "actual knowledge" cases. According to *Roberson* the rule has existed since Ogletree v. Jones, 44 N.M. 567, 106 P.2d 302 (1940). *Ogletree,* an "actual knowledge" case concerned with the sufficiency of notice of *injury,* states: " * * * the knowledge which the employer must have to excuse a formal notice *is of a compensable injury.* * * * " (Our emphasis). For this knowledge to exist, the employer must have knowledge of what caused the injury; thus, knowledge of the accident. *Ogletree* was decided when the statute required actual knowledge of an injury; not of an accident. Although ·*Ogletree* imposed the requirement of actual knowledge of both an accident and injury, that decision is not authority for continuing a two-fold requirement when the statutory change in 1959 removed the requirement of actual knowledge of injury.

Roberson v. Powell, supra, and the decisions applying the Roberson rule since the 1959 legislative change, are erroneous for two reasons. The two-fold rule disregards the legislative change, yet " * * * we must presume that the legislature, in enacting a statute, intended to change the law as it had theretofore existed. * * * "

Bettini v. City of Las Cruces, 82 N.M. 633, 485 P.2d 967 (1971). The two-fold rule would add words to § 59–10–13.4(B), supra. With the added words, the statute would provide that written notice is not required where the employer " * * * in charge of the work in connection with which the accident occurred had actual knowledge of its occurrence *and actual knowledge of a compensable injury.*" The emphasized words are not part of the statute as enacted by the Legislature. " * * * We are not permitted to read into a statute language which is not there, particularly if it makes sense as written. * * * " State ex rel. Barela v. New Mexico State Bd. of Ed., 80 N.M. 220, 453 P.2d 583 (1969). Section 59–10–13.4(B), supra, makes sense as written.

■ We recognize that the purpose of the notice requirement is: (a) to enable the employer to investigate the accident while the facts are accessible and (b) if necessary, to employ doctors to speed recovery. Waymire v. Signal Oil Field Service, Inc., supra; see Clark v. Duval Corporation, supra; · Larson's Workmen's Compensation Law, § 78.20 (1971). Purpose (a) is met when the employer has actual knowledge of the accident. Purpose (b) will not necessarily be met since § 59–10–13.4(B), supra, does not require the employer to have actual knowledge of an injury. Without such knowledge, the employer may not know of the need for any medical attention. It may be that a dual requirement of.actual knowledge of accident and injury, similar to the written notice requirement, would be an appropriate provision. Yet, the Legislature, by the change enacted in 1959, eliminated the requirement of actual knowledge of injury. If this change defeats the purpose of notice requirements, it is a matter for legislative consideration.

■ Since Cactus and McVay had actual knowledge of Beckwith's two accidents, the notice requirement was satisfied. Thus, defendants' claim of lack of notice

of the low back and spine injuries is without merit.

*Partial disability.*

■ The trial court found that Beckwith had a 15% partial permanent disability by reason of the accidental injury to his back. Cactus asserts there is no evidence to support this finding. Cactus does not contend there is an absence of evidence that a disability existed or that the disability was caused by the accident. The claim is directed to the amount of the disability —the 15%.

We need not review the evidence in detail. A doctor testified that as a result of the various injuries, Beckwith had a 50% disability to the body as a whole. Apportioning the disability to the various injuries, the doctor attributed a 10% disability to the low back injury and 5% disability to the aggravation of the pre-existing low back problem. See Reynolds v. Ruidoso Racing Association Inc., 69 N.M. 248, 365 P.2d 671 (1961). This medical evidence, together with evidence that Beckwith had never been bothered with his low back prior to the Cactus accident and evidence of the limitation on his ability to work due to his low back condition subsequent to the accident, is substantial evidence to support the finding. Lucero v. Los Alamos Constructors, Inc., 79 N.M. 789, 450 P.2d 198 (Ct.App.1969).

*Liability for medical treatment.*

A preliminary matter under this point is a suggestion that this issue, raised by Cactus, has been waived because certain findings were not argued in the brief in chief.

The statement of proceedings challenges findings 6, 7, 28, 29, 30 and 31 and conclusion of law 5, which is based on the challenged findings. The challenged findings involve medical expenses for which Cactus was held liable. The point in the brief which argues the question of liability expressly mentions findings 6 and 7, but does not expressly mention the other challenged findings.

The suggestion of waiver is based on the provision of § 21–2–1(15)(16)(b), N.M.S.A.1953 (Repl.Vol. 4) which states:

"Statement of the grounds for challenging any finding must be set forth in the argument and not in the statement of proceedings."

Findings 6 and 7 go to the basis of Cactus' medical liability under § 59–10–19.1, N.M.S.A.1953 (Repl.Vol. 9, pt. 1). The amendment to that section appearing in the 1971 pocket supplement is not applicable, having been enacted subsequent to the date of the accident and injuries involved in this issue. These findings refer to the reasonableness and adequacy of the medical treatment provided by Cactus.

Findings 28 through 31 charge Cactus with a portion of the medical expenses incurred in the treatment of Beckwith. These expenses are identified by relating them to physicians named in the findings.

Cactus argues, in its brief, that there is no basis for liability on its part (findings 6 and 7) and, therefore, it cannot be liable for the medical expenses of specified doctors. These are the doctors identified in findings 28 through 31. The brief clearly argues all of the challenged findings.

■ The suggestion of waiver is based solely on the fact that findings 28 through 31 are not specifically named in the argument in the brief. This is a hypertechnicality. We decline to apply the concept of waiver on such a basis. Compare Ortiz v. Ortiz & Torres Dri-Wall Company, 83 N.M. 452, 493 P.2d 418 (Ct.App.1972).

Beckwith's accident, while employed by Cactus, occurred December 25, 1969. Cactus supplied and paid for medical treatment through March 26, 1970. There is no issue concerning the treatment provided during this period of time.

From March 26, 1970 until October, 1970, Cactus continued to provide and pay for medical treatment. Beckwith became dissatisfied with the treatment provided and asked Cactus' insurance adjuster for a

change of doctor. This request was declined. Thereafter, Beckwith placed himself under the care of Dr. Palmer. Informed of this, the adjuster declined approval of treatment by Dr. Palmer and refused to pay Dr. Palmer's charges. The testimony is conflicting as to whether, in these conversations, the adjuster affirmatively offered continued care by the physicians provided by Cactus. This conflict is not material. There is no evidence that Beckwith sought further care from the doctors provided by Cactus after his conversations with the adjuster.

Some request or demand must have been made upon Cactus to provide treatment. Dudley v. Ferguson Trucking Company, 61 N.M. 166, 297 P.2d 313 (1956). Cactus may not be held liable for the cost of medical services if Beckwith did not permit Cactus to furnish them. Wuenschel v. New Mexico Broadcasting Corp., 84 N.M. 109, 500 P.2d 194 (Ct.App.1972); Hedgecock v. Vandiver, 82 N.M. 140, 477 P.2d 316 (Ct.App.1970).

The trial court did not find Cactus liable for medical services on the basis that medical services were sought but not provided. Liability was found on the basis that the services provided from March 26, 1970 until October, 1970, were " * * * not adequate and reasonable medical treatment * * *" (finding #6), and the treatment by Dr. Palmer, from October, 1970 to date of trial, took place " * * * after defendants failed and refused to provide adequate medical treatment * * *" (finding #7).

Findings 28, 29 and 30 charge Cactus with liability for a portion of the medical expenses incurred while Beckwith was under Dr. Palmer's care. Liability for these charges depends upon whether the treatment provided by Cactus was unreasonable or inadequate. Finding 31 is in a different category and will be discussed subsequently. The question of "reasonableness" arises under Paragraph A of § 59–10–19.1, supra. The question of "adequacy" arises under Paragraph D of the same section.

Cactus' doctor released Beckwith to return to work about March 27, 1970. Beckwith's leg continued to bother him and he experienced pain in his low back. He reported this to the treating physician who was seeing him about once a month. The treating physician referred him to Dr. Dalton. Dr. Dalton's examination was August 17, 1970. Dr. Dalton made a written report as to recommended treatment. This report referred to the possibility that at some future time veins in Beckwith's leg might have to be stripped.

Beckwith wanted a change from the doctors provided by Cactus because the treating physician " * * * was doing no more than just talking to me. * * * He wasn't doing anything for the pain." Beckwith went to the physician of his choice, Dr. Palmer, on October 16, 1970. Beckwith complained of low back pain on this visit. His leg was examined and a course of treatment was undertaken by Dr. Palmer. This treatment continued until Beckwith had his accident while employed by McVay, December 3, 1970.

Until the McVay accident, according to Beckwith, he did not seem to be getting any better under Dr. Palmer's care.

Dr. Palmer reviewed Dr. Dalton's report of August, 1970. This report dealt with Beckwith's leg problem. Dr. Palmer testified: " * * * I would agree essentially with his [Dalton's] findings at that time [August, 1970]." As to Dr. Palmer's findings in October, 1970: "My findings were essentially the same when I saw him somewhat later. * * *" Dr. Palmer had a few additional findings and prescribed some additional medication. He explained these in terms of progression of Beckwith's leg problem from August to October, 1970. Dr. Palmer was of the opinion that Beckwith " * * * will very probably need a surgical stripping of his left lower leg * * * but this should be postponed as long as possible. * * *"

After October 16, 1970, Dr. Palmer saw Beckwith twice more in October, once in December prior to the McVay accident,

and regularly after December 11, 1970, up into March, 1971. Dr. Palmer testified there were no complaints and no objective findings as to the low back during this period of time. "Really, my first indication of back problem * * *" was March 31, 1971.

After the McVay accident, Beckwith was hospitalized and treated for injuries received in both accidents. This treatment included the vein stripping operation referred to by both Dr. Dalton and Dr. Palmer. There was also treatment for the low back.

Assuming, but not deciding, that lay testimony can be properly considered concerning the reasonableness or adequacy of medical treatment [see Morris v. Rogers, 80 N.M. 389, 456 P.2d 863 (1969); Woods v. Brumlop, 71 N.M. 221, 377 P.2d 520 (1962); Cervantes v. Forbis, 73 N.M. 445, 389 P.2d 210 (1964)], Beckwith's testimony does not support a finding of unreasonable or inadequate treatment by doctors provided by Cactus. Beckwith admitted that he did not seem to get better under Dr. Palmer's care.

Nor does the medical testimony support the trial court's findings. Dr. Palmer agreed with the treatment recommended for Beckwith's leg by Dr. Dalton as of the time Dr. Dalton's recommendation was made. Changes in the leg condition and new medication provided by Dr. Palmer were attributed to progression of the leg problem. This progression occurred during a time period for which there is no evidence that doctors provided by Cactus had an opportunity to provide treatment. The same is true for the treatment of the leg after the McVay accident. There is no evidence that doctors provided by Cactus had an opportunity to provide that treatment.

As to the low back condition, there is no evidence that the low back was complained about or treated by Cactus' doctors from shortly after Beckwith's return to work until October, 1970. The complaint of low back pain on October 16, 1970, was to Dr. Palmer, not to doctors provided by Cactus.

Dr. Palmer did not characterize the low back as a problem until March, 1971.

■ The findings of unreasonable and inadequate treatment by doctors provided by Cactus are not supported by substantial evidence. Findings 28, 29 and 30, and the portion of conclusion of law 5 based on those findings, are erroneous to the extent they charge Cactus with medical costs incurred in connection with Dr. Palmer's treatment and treatment provided by physicians to whom Dr. Palmer referred Beckwith.

■ Finding 31 is to the effect that Dr. Breck examined and treated Beckwith for injuries received in both the Cactus and McVay accidents; that the examination and treatment were reasonably necessary; that Dr. Breck's charges were reasonable. The finding charges Cactus with one-half of Dr. Breck's bill. There is no evidence that Cactus was ever requested to provide the services provided by Dr. Breck. See Dudley v. Ferguson Trucking Company, supra. There is no evidence, nor is there a finding as there was in connection with Dr. Palmer's treatment, that Dr. Breck's services came about because the treatment by Cactus' doctors was unreasonable or inadequate. The evidence is that Beckwith's attorney sent Beckwith to Dr. Breck. Compare Wuenschel v. New Mexico Broadcasting Corporation, supra. There is nothing in the record providing a basis for holding Cactus liable for Dr. Breck's bill under § 59–10–19.1, supra.

Finding 31, and the portion of conclusion 5 based on that finding, are erroneous to the extent they charge Cactus with medical costs that Beckwith incurred with Dr. Breck.

The awards of compensation are affirmed. The award of medical expenses against Cactus, for charges incurred under Dr. Palmer's treatment, for charges by physicians to whom Dr. Palmer referred Beckwith, and for the charges of Dr. Breck, is reversed.

■ Beckwith is awarded $1200.00 for the services of his attorney in defending

the compensation award on appeal. $700.-00 is to be paid by Cactus Drilling Corporation and Liberty Mutual Insurance Company; $500.00 is to be paid by McVay Drilling Corporation and Reliance Insurance Company.

The cause is remanded for further proceedings consistent with this opinion.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., concurs in part and dissents in part.

SUTIN, Judge (concurring in part, and dissenting in part).

I concur in part and dissent in part. I concur in affirmance of awards of compensation, and dissent on the denial of certain medical expense to Beckwith.

### A. *Cactus and Liberty Mutual*

### (1) *Sufficiency of Statutory Notice*

Cactus and Liberty Mutual claim that compensation is barred because of insufficiency of notice under § 59–10–13.4, N.M. S.A.1953 (Repl.Vol. 9, pt. 1). They admit receipt of *written notice* that plaintiff sustained compensable injury to his left leg, but contend that they had no notice within the statutory period of an injury to his low back, not connected in any way to the leg injury.

These defendants challenge the sufficiency of the following finding of fact:

4. The defendants had actual knowledge, within 30 days, of the accident of December 25, 1969, and that plaintiff suffered compensable injuries as a result thereof.

Section 59–10–13.4, supra, provides in part:

A. Any workman claiming to be entitled to compensation from any employer shall give notice in writing to his employer of the accident *and of the injury* within thirty [30] days after their occurrence; * * *.

B. No written notice is required to be given where the employer * * * *in connection with which the accident occurred had actual knowledge of its occurrence.* [Emphasis added]

There are two lines of authority under subsection B on the sufficiency of notice based upon "actual knowledge" of defendants.

(1) Written notice is not required where an employer has actual knowledge of the occurrence of the *accident.* Waymire v. Signal Oil Field Service, Inc., 77 N.M. 297, 422 P.2d 34 (1966); Collins v. Big Four Paving, Inc., 77 N.M. 380, 423 P.2d 418 (1967).

2. Written notice is not required where an employer has actual knowledge of the occurrence of the accident "and a compensable injury." Roberson v. Powell, 78 N.M. 69, 428 P.2d 471 (1967). Roberson does not require actual knowledge of "each specific compensable injury." Actual knowledge of "a compensable injury" is sufficient. Defendants admit actual knowledge as well as written notice of "a compensable injury" to the leg.

Finding No. 4, supra, is sufficient notice under either rule.

Some discussion of the two rules is necessary to arrive at a fixed principle of law because notice under § 59–10–13.4, supra, is a mandatory requirement and a condition precedent to recovery of workmen's compensation. Geeslin v. Goodno, Inc., 75 N. M. 174, 402 P.2d 156 (1965).

Section 59–10–13.4, supra, was enacted in 1959. Ch. 67, § 8, 1959. This Act repealed § 59–10–13, N.M.S.A.1953 (Vol. 9), the former statute, which stated in part:

Provided, that no such written notice shall be requisite where the employer * * * *in connection with [which] such injury occurred* had actual knowledge of the occurrence thereof. [Emphasis added]

The 1959 Act substituted the phrase "in connection with which the *accident* occurred," for the previous phrase "in connection with which such *injury* occurred." [Emphasis added] It was clearly the intent of the legislature to make actual knowledge of the "accident" sufficient notice to the employer. With actual knowledge of the "accident," the burden shifted to the employer to investigate the accident, to investigate the facts while they were assessible to determine whether a compensable injury occurred, and, if necessary, to employ a doctor to speed recovery. *Collins* and *Waymire,* supra. This analysis follows the language of the 1959 Act.

It is obvious that the primary purpose of statutory notice, whether written or actual, is to alert the employer to the occurrence of an accident. Upon notice of the accident, the employer has the right to select the physician or surgeon to care for injured employees. Valdez v. McKee, 76 N. M. 340, 414 P.2d 852 (1966). This physician or surgeon will examine the employee to determine whether compensable injuries have occurred.

Under "written notice," an employee is not burdened with notifying the employer of every compensable injury sustained. He may not know. Under § 59–10–13.-4(A), supra, he is required to give notice only of "the injury" for which he seeks compensation. The employer's physician or surgeon will determine the extent of "the injury" and whether other compensable injuries occurred.

Where the employer has "actual notice" of an accident, he must determine whether an injury occurred because, "after injury," it is mandatory that the employer "furnish all reasonable surgical, medical * * * and hospital services and medicine." Section 59–10–19.1(A), N.M.S.A.1953 (Repl. Vol. 9, pt. 1, Supp.1971). Hedgecock v. Vandiver, 82 N.M. 140, 477 P.2d 316 (Ct. App.1970).

The medical benefits provided for "injury" under § 59–10–19.1, supra, cannot be limited by the notice provisions of "the injury" under § 59–10–13.4, supra. Compare Valdez v. McKee, supra.

To follow the Roberson rule, supra, requires reading into subsection B, supra, the following additional emphasized words:

No written notice is required to be given where the employer * * * in connection with which the accident occurred had actual knowledge of its occurrence [*and actual knowledge of a compensable injury.*]

The question is: Can an appellate court read language into subsection B to further protect the employer? The answer is "no." There are at least four reasons.

(a) An express repeal of a statute takes all force away from it because it is totally destroyed. Where the new statute enacted is in plain and explicit language, the legislature means what it says. Gustafson v. Rajkovich, 76 Ariz. 280, 263 P.2d 540, 40 A.L.R.2d 520 (1953); Woolsey v. Lassen, 91 Ariz. 229, 371 P.2d 587 (1962). The repealed act "is operationally deemed to have never existed." Garrison v. Garrison, 179 N.W.2d 466 (Iowa 1970); Certain Taxpayers v. Sheahen, 45 Ill.2d 75, 256 N.E.2d 758 (1970). In the instant case, the legislature substituted the word "accident" for "injury," and actual knowledge of the "accident" is a sufficient compliance with subsection B.

*Roberson,* supra, relies upon § 59–10–13, supra, which was repealed. *Collins* and *Waymire,* supra, do not.

(b) We must presume that the legislature, in enacting § 59–10–13.4, supra, intended to change the law as it had theretofore existed. Bettini v. City of Las Cruces, 82 N.M. 633, 485 P.2d 967 (1971).

(c) "We are not permitted to read into a statute language which is not there, particularly if it makes sense as written." State **ex** rel. Barela v. New Mexico State Bd. of Ed., 80 N.M. 220, 453 P.2d 583 (1969).

(d) "Written notice" under subsection A is a general provision which is controlled by the special provision set forth in subsection B for "actual notice." Cromer v. J. W. Jones Construction Company, 79 N.M. 179, 441 P.2d 219 (Ct.App.1968).

We do not believe that the words "and actual knowledge of a compensable injury" can be added to § 59–10–13.4(B), supra.

### (2) Sufficiency of Finding on Partial Disability

The trial court found:

11. By reason of the accidental injury to his back arising out of and in the course of his employment on December 25, 1969, the plaintiff had on March 29, 1971, and will continue to have a 15% partial permanent disability to perform the usual tasks he was performing on December 25, 1969, and to perform any work for which he is fitted.

Defendants claim there is no evidence to sustain the finding.

Unattacked findings of the trial court show that "As a medical probability, plaintiff is suffering permanent disability to his left leg and low back as a result of injuries thereto," and "there is a causal connection between the injuries to his left leg and low back and the accident of December 25, 1969." The only issue is whether there is sufficient evidence to support a finding of 15% partial permanent disability.

A review of the medical testimony supports the finding. A physician testified that Beckwith had 10% permanent disability to the body as a whole due to the injury to his lower back, and 5% additional due to the aggravation of the pre-existing low back problem. There was other medical testimony to support the finding. The trial court is not bound solely by expert testimony. "Medical testimony, like other expert evidence, is intended to aid but not to conclude the trier of the facts in determining the extent of disability." Lucero v. Los Alamos Constructors, Inc., 79 N.M. 789, 450 P.2d 198 (Ct.App.1969).

There was sufficient evidence to support the finding of 15% partial permanent disability.

### (3) Sufficiency of Findings on Medical Treatment

Defendants attack two findings of fact on medical treatment. They are:

6. From March 26, 1970, until October of 1970, defendants provided and paid for medical treatment to the plaintiff *which was not adequate and reasonable medical treatment* for the injuries arising out of the accident on December 25, 1969.

7. From October, 1970, to date after defendants failed and refused to provide adequate medical treatment for plaintiff, Dr. Graham Palmer furnished and prescribed to plaintiff medical treatment, hospital services and medication which were adequate and reasonably necessary for plaintiff's injuries arising out of the accident on December 25, 1969, for which defendants have not paid directly or reimbursed plaintiff. [Emphasis added]

It is not necessary to determine whether findings Nos. 6 and 7 are erroneous because any claimed error is cured by findings Nos. 28, 29, 30 and 31. These findings granted Beckwith recovery for medical treatment and hospitalization by four doctors from October, 1970, to date. Defendants contend they are not obligated to pay these additional expenses. In the Statement of Proceedings, these findings were "Challenged—Point III." Under Point III of the brief in chief, defendants limited argument to findings Nos. 6 and 7, supra. No mention was made of findings Nos. 28, 29, 30 and 31.

The pertinent Supreme Court Rule § 21–2–1(15)(16)(b), N.M.S.A.1953 (Repl. Vol. 4) states in part:

Statement of the grounds for challenging any finding *must be set forth in the argument* and not in the Statement of Proceedings. [Emphasis added]

This provision is mandatory. The defendants waived all challenges made in the

Statement of Proceedings because they failed to argue findings Nos. 28, 29, 30 and 31 in the brief in chief. These findings, therefore, were not properly challenged or directly attacked. They are binding upon this court. Hedgecock v. Vandiver, supra. They constitute facts upon which this case rests in this court. Baca v. Gutierrez, 77 N.M. 428, 423 P.2d 617 (1967). These findings are sufficient to cast on defendants the obligation to pay for medical treatment and hospitalization from October, 1970, to date of trial.

I dissent from that portion of the majority opinion which denies certain medical expense. As long as this court condones noncompliance with rules of appellate procedure, the rules will have a useless life.

B. *McVay and Reliance*

(1) *Sufficiency of Notice*

McVay and Reliance also claim they did not have notice as required by statute of a compensable injury to Beckwith's cervical or thoracic spine, by accident suffered on December 3, 1970.

The trial court found:

17. The defendants had actual knowledge, within 30 days, of the accident of December 3, 1970, and that the plaintiff suffered compensable injuries as a result thereof.

These defendants challenged this finding. On December 29, 1970, within the 30 day period, Beckwith gave defendants written notice of the accident which occurred on December 3, 1970, together with notice that he suffered a compensable injury to his right leg and to his eyes. No mention was made of any injury to his spine.

For the reasons set forth under "Sufficiency of Notice" in Cactus and Liberty Mutual, I find no error.

In my opinion, Beckwith is entitled to additional attorney fees for this appeal at least in the sum of $1500.00. We should begin to recognize the value of services in 1972.